Fred F. WOLF, Plaintiff-Appellant,

v.

FORD MOTOR COMPANY, Defendant-Appellee.

No. 86–2636.

United States Court of Appeals, Fourth Circuit.

Submitted May 7, 1987.

Decided Aug. 13, 1987.

(Charles McDonnell Radigan; Barham, Radigan & Manning, P.C., Arlington, Va., on brief), for plaintiff-appellant.

(R. Terrence Ney; Robert R. Vieth; McGuire, Woods, Battle & Boothe, McLean, Va., on brief), for defendant-appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and WISDOM, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

SPROUSE, Circuit Judge:

In this diversity action, Fred F. Wolf appeals from the district court's dismissal of his common law fraud claim against Ford Motor Company and its denial of his request for attorneys' fees on his success-

ful claim against Ford under the Virginia "Lemon Law." [1] We affirm.

In July 1985, Wolf purchased a new Ford automobile from a Lincoln-Mercury dealer in Warrenton, Virginia. The written warranty issued by Ford provided that the dealer would repair or replace defective parts during the warranty period. It also provided that in case of a warranty dispute, Wolf could utilize the procedures of the Ford Consumer Appeals Board (FCAB), which was described as a "cost-free, independent, third-party, dispute settlement mechanism available to Ford Motor Company product owners." Wolf experienced difficulty with the car and, after he failed to reach a satisfactory solution with the dealer, submitted a complaint to the FCAB. The FCAB, however, concluded that Wolf had not complied with the Virginia "Lemon Law" and denied him relief. Wolf then brought this diversity action in district court.

Wolf's action contained two counts. In Count I, he asked for rescission of his purchase of the Ford automobile, refund of the purchase price, and expenses—including attorneys' fees—under the Virginia "Lemon Law." Va.Code § 59.1–207.13. In Count II, Wolf sought to recover compensatory and punitive damages based on Ford's allegedly fraudulent representation that the FCAB was an independent and impartial apparatus for resolving disputes between Ford and its customers. The district court dismissed Count II at the beginning of the trial holding, in effect, that the fraud cause of action premised on Virginia law was preempted by a provision of the Magnuson-Moss Act [2] and regulations issued pursuant to the Act. 16 C.F.R. § 703.1 et seq. Wolf's claim under the "Lemon Law" proceeded to trial, and the jury returned a verdict in his favor. The court, however, denied Wolf's request for attorneys' fees.

■ The Magnuson-Moss Act regulates written warranties on consumer products distributed in interstate commerce. It provides that, subject to certain statutory requirements, an injured consumer can seek damages in a civil action for warranty violations. 15 U.S.C. § 2310(d). One of the requirements relates to informal dispute settlement mechanisms such as the consumer appeals board involved in this case. Although the Act does not require the establishment of such boards, it encourages warrantors, including automobile manufacturers, to do so. If a warrantor establishes such a board and incorporates a written requirement within the warranty that a consumer first resort to the procedures, the consumer must utilize the procedures prior to bringing the statutory action provided by the Act. 15 U.S.C. § 2310(a)(3).

Wolf utilized the FCAB, the dispute settlement mechanism Ford established under the auspices of the Act. After his unsuccessful experience with it, however, he did not institute an action authorized by Magnuson-Moss. Instead, Wolf brought this two-prong diversity action grounded on Virginia's "Lemon Law" and common law fraud.

The district court dismissed Wolf's fraud count because "it would require the factfinder to determine, under the guise of a fraud claim, whether the Ford Consumer Appeals Board has complied with FTC Rule 703, and whether the said appeals board is fair and impartial...." Although not couched specifically in preemption terms, the district court's holding was grounded on the preemption doctrine, which emanates from the Supremacy Clause of the United States Constitution. In *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), the Supreme Court stated:

> Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress'

---

1. Virginia Motor Vehicle Warranty Enforcement Act, Va.Code § 59.1–207.9 et seq.

2. Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq.

intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose."

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." These principles are not inapplicable here simply because [the state law] is a matter of special concern to the States: "The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail."

(citations omitted). Here, Congress has not explicitly preempted any state laws affecting private dispute settlement boards. Congress' intent to preempt state regulation, however, can be inferred both from the pervasive nature of the federal regulatory scheme and from the conflict that would result if Wolf's fraud claim were allowed.

In the first place, the Magnuson-Moss Act's endorsement of private dispute settlement mechanisms to resolve warranty claims, coupled with its mandate that the Federal Trade Commission prescribe minimum requirements for such mechanisms, evince a congressional intent to reserve to the federal regulatory body the authority to supervise whether the mechanisms are created and operated fairly. The preemptive design of the FTC regulations is even more obvious. Pursuant to the Act's mandate, the FTC promulgated regulations governing private dispute settlement mechanisms and established minimum requirements for their operation. 16 C.F.R. § 703.1 *et seq.* The FTC regulations are extensive and address all facets of the mechanisms' operation.[3] They leave no room for state regulation.

---

3. The comprehensive details of the regulations demonstrate that any attack on the fairness or legitimacy of a dispute settlement mechanism must be through administrative channels. The regulations prescribe the minimum requirements for the mechanisms, from disclosure of their availability to recordkeeping to audits. Among other things, a warrantor must disclose on the face of a written warranty the name and address of the dispute mechanism and a statement that a consumer must resort to the mechanism before filing suit under the Magnuson-Moss Act. 16 C.F.R. § 703.2.

Several regulations promote the independence of private dispute settlement mechanisms. The mechanism must be staffed and funded "at a level sufficient to ensure fair and expeditious resolution of all disputes," with funds committed in advance. 16 C.F.R. § 703.3. Consumers cannot be charged for using the mechanism. Members deciding a dispute cannot be a party to the dispute, nor employees or agents of a party, nor have any direct involvement in the manufacture, distribution, sale or service of any product involved in the dispute, except as provided in the regulations. 16 C.F.R. § 703.4.

The regulations are also designed to ensure the fairness of a mechanism's procedures. It must develop written operating procedures, which must be available upon request. The procedures must include provisions for notice to both parties that the mechanism has received notification of the dispute. The mechanism must investigate the dispute and provide each side with an opportunity to address information that contradicts facts submitted by a party. 16 C.F.R. § 703.5(c). It may allow oral presentations if specified procedures are followed. 16 C.F.R. § 703.5(f). The mechanism must, with narrow exceptions, render a decision within 40 days of notification of the dispute; and must state the reason for its decision, specify a reasonable time for compliance, and determine whether the warrantor will abide by the decision (if the decision requires action by the warrantor). 16 C.F.R. § 703.5(d). The mechanism must also inform the consumer of his right to pursue a civil action. 16 C.F.R. § 703.5(g).

Several regulations contain requirements to guarantee the accountability of a mechanism for its decisions. The mechanism must maintain comprehensive records of individual disputes and compile statistics of disputes resolved,

Moreover, allowing consumers to challenge the operation of dispute settlement boards through state fraud actions would conflict with enforcement of the FTC regulations. The Act grants the FTC the authority, and the obligation upon written complaint, to investigate a dispute settlement procedure to determine if it is in compliance with the statutory and regulatory requirements. Upon complaint, the FTC "shall, review the bona fide operation of any dispute settlement procedure...." 15 U.S.C. § 2310(a)(4). If the mechanism is not in compliance, the Commission can take any remedial action authorized under the Act, including injunction proceedings. 15 U.S.C. § 2310(a)(4), (c)(1).

 Wolf seeks to test whether the FCAB was independent and unbiased under Virginia's common law fraud standard. The FTC, however, has promulgated detailed regulations to ensure the independent nature of private dispute settlement mechanisms. The Magnuson-Moss Act provides for oversight by the FTC to ensure that a mechanism is in compliance with the regulations. To permit consumers to test the bona fide nature and validity of private dispute settlement mechanisms, such as the FCAB, under the law of each state would frustrate completely the goal of national uniformity painstakingly designed by federal statute and regulation. The district court, therefore, correctly dismissed Wolf's fraud claim.

Wolf also contends that the district court erred in denying him attorneys' fees in his claim under Virginia's "Lemon Law." The statute provides that the consumer may recover "[m]ileage, expenses, and reasonable loss of use necessitated by attempts to conform such motor vehicle to

the express warranty." Va.Code § 59.1–207.13(A)(2). The district court interpreted this provision to contemplate expenses such as towing fees and repair costs, not attorneys' fees, and refused to infer that the Virginia legislature intended to include attorneys' fees as recoverable expenses. We agree. *See Hiss v. Freidberg,* 201 Va. 572, 112 S.E.2d 871, 875 (1960); *see also Jefferson-Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley,* 638 F.2d 670, 676 (4th Cir.1980).

For the above reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

including indices of disputes organized by brand name and product model, disputes in which the warrantor has refused to abide by the mechanism's decision, and disputes resolved after the 40–day period. 16 C.F.R. § 703.6. The consumer may obtain copies of all records relating to his dispute, and the statistical summaries must be available to the public. 16 C.F.R. § 703.8. Information relating to the qualifications of the staff and members of the mechanism must also be subject to public review. The mechanism must undergo an annual audit to determine whether it is in compliance with the regulations. 16 C.F.R. § 703.7. The audits include an evaluation of the warrantor's efforts to inform consumers of the mechanism, the required indices and statistics, and a random sample of disputes resolved by the mechanism. The analysis of the disputes must determine the adequacy of the mechanism's forms, investigation, mediation, and follow-up efforts and the accuracy of the statistical summaries. Audit reports must be submitted to the FTC and be available to the public.