681 F.Supp. 1374 (1988)
AUTOMOBILE IMPORTERS OF AMERICA, INC.; Alfa Romeo, Inc.; American Isuzu Motors, Inc.; BMW of North America, Inc.; Hyundai Motor Co. America; Jaguar Cars, Inc.; Mazda Motors of America (Central), Inc.; Mitsubishi Motor Sales of America, Inc.; Nissan Motor Corporation in U.S.A.; Peugeot Motors of America, Inc.; Porsche Cars of North America, Inc.; Rolls Royce Motors, Inc.; Saab-Scania of America, Inc.; Suzuki of America Automotive Corporation; Volvo of North America Corporation; and Yugo of America, Inc., Plaintiffs,
v.
STATE OF MINNESOTA and the Attorney General for the State of Minnesota, Defendants.
Civ. No. 4-87-683.
United States District Court, D. Minnesota, Fourth Division.
March 25, 1988.
*1375 John M. Mason, and Gregory A. Fontaine, Dorsey & Whitney, Minneapolis, Minn., and John Whatley, Arlington, Va., for plaintiffs.
Stephen P. Kilgriff, Deputy Atty. Gen., and D. Douglas Blanke, Asst. Atty. Gen., St. Paul, Minn., for defendants.

MEMORANDUM OPINION AND ORDER
DIANA E. MURPHY, District Judge.
Plaintiff Automobile Importers of America, Inc., a not-for-profit District of Columbia corporation, and fifteen of its members, all importers of automobiles sold in Minnesota, brought this action against the State of Minnesota and the Attorney General of the State of Minnesota. Plaintiffs challenge amendments made in 1987 to the Minnesota "lemon law," Minn.Stat. § 325F.665. The amendments require auto manufacturers to provide an informal dispute settlement mechanism in the State of Minnesota to deal with warranty disputes. Count 1 of plaintiffs' first amended complaint alleges that several provisions of the state statute are preempted by the Magnuson-Moss Warranty  Federal Trade Commission Improvement Act (Magnuson-Moss or the Act), 15 U.S.C. §§ 2301-2312, and regulations promulgated under Magnuson-Moss by the Federal Trade Commission, 16 C.F.R. §§ 703.1-703.8 (1987). Count 2 asserts that the state statute effects a government taking of private property without due process and just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 7 and 13 of the Minnesota Constitution.[1] Jurisdiction is alleged under 28 U.S.C. § 1331 and pendent jurisdiction.
Plaintiffs seek a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that the Minnesota lemon law is invalid and unenforceable. They also request an injunction enjoining the enforcement or implementation of the provision.
Plaintiffs filed their original complaint on July 29, 1987, three days prior to the scheduled effective date of the amendments. On July 31, 1987, the Honorable David S. Doty denied plaintiffs' motion for a temporary restraining order that would have enjoined enforcement of the amendments. Agreeing that no disputed issues of material fact remain, each side now moves for summary judgment.

Background

A. The Magnuson-Moss Act
In enacting Magnuson-Moss in 1975, Congress sought to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). To this end, the Act directs the Federal Trade Commission (FTC) to establish rules requiring warranties to be written in simple and understandable language. Id. Congress also declared it to be its policy "to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). The Act thus permits, but does not require, warrantors to establish informal dispute settlement mechanisms. It directs the FTC to establish "rules setting forth minimum requirements" for such mechanisms. 15 U.S. C. § 2310(a)(2). Under these regulations, consumers cannot be charged a fee for use of the mechanism, 16 C.F.R. § 703.3(a) (1987), and neither party has a right to make an oral presentation unless the other agrees, 16 C.F.R. § 703.5(f) (1987). The regulations also set forth many other requirements for informal dispute mechanisms. *1376 See generally 16 C.F.R. § 703 ("Rule 703").
The Act includes a number of provisions concerning its relationship with state laws:
(b) Rights, remedies, and liabilities
(1) Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law.
(2) Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury.
(c) State warranty laws
(1) Except as provided in subsection (b) of this section and in paragraph (2) of this subsection, a State requirement 
(A) which relates to labeling or disclosure with respect to written warranties or performance thereunder;
(B) which is within the scope of an applicable requirement of sections 2302, 2303, and 2304 of this title (and rules implementing such sections), and
(C) which is not identical to a requirement of section 2302, 2303, or 2304 of this title (or a rule thereunder),
shall not be applicable to written warranties complying with such sections (or rules thereunder).
15 U.S.C. § 2311. Subsection (b) is commonly referred to as a "savings clause" and subsection (c) is referred to as a "preemption clause."

B. The Minnesota Lemon Law
Minnesota enacted its "lemon law" in 1983 in order to provide protections for the owners of new motor vehicles. Minn.Stat. § 325F.665. The law establishes a duty of manufacturers to repair new cars to conform to the written warranty for up to a period of two years, id. at subd. 2, and allows car owners to bring an action in state court to seek a refund, id. at subd. 9. The manufacturer may require a consumer to participate in an informal dispute settlement mechanism before bringing an action in state court. Id. at subd. 6(a). The results of the mechanism are nonbinding, unless otherwise agreed upon by the parties. Id. at subd. 7.[2]
In 1987, the Minnesota legislature amended the lemon law statute. Plaintiffs challenge three aspects of those amendments that differ from federal law. First, the lemon law, as amended, provides that auto manufacturers "shall operate, or participate in, an informal dispute settlement mechanism located in the state of Minnesota which complies with the provisions of the Code of Federal Regulations, title 16, part 703, and the requirements of this section." Minn.Stat. § 325F.665 subd. 6(a). The lemon law thus requires manufacturers to provide such a mechanism while Magnuson-Moss permits, but does not require, such mechanisms. Second, under the lemon law, the mechanism "shall allow each party to appear and make an oral presentation in the state of Minnesota." Id. at subd. 6(e). By contrast, Rule 703 allows such presentations only when the opposing party consents. Finally, the lemon law provides that "[a] consumer may be charged a fee to participate in an informal dispute settlement mechanism required by this section, but the fee may not exceed the conciliation court filing fee in the county where the arbitration is conducted." Id. at subd. 6(i). Rule 703 provides that consumers may not be charged a fee for participation in a mechanism.[3]

*1377 Discussion

A. Count One  Preemption
Plaintiffs argue that the disputed 1987 amendments to the lemon law are preempted by Magnuson-Moss and Rule 703. Preemption of state law by federal law is "not to be lightly presumed." California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed. 2d 613 (1987). Nevertheless, it may occur in three ways. First, Congress may explicitly indicate that it intends to preempt state law. Second, implied preemption may be inferred "when the federal legislation is `sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.'" International Paper Co. v. Ouellette, 479 U.S. 481, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987) (citations omitted). Finally, if Congress has not completely displaced state regulation in a specific area, state law may still be preempted to the extent that it
actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941).
Fidelity Fed. Sav. & Loan Ass'n. v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); see also California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed. 2d 613 (1987) (describing three means of preemption); Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 2522-23, 81 L.Ed.2d 399 (1984) (same). Apparently conceding that no explicit indication of preemption exists, plaintiffs assert that the lemon law provisions are preempted under the second and third standards.
Plaintiffs first argue that Magnuson-Moss and the FTC regulations establish a comprehensive procedural framework that leaves no room for state regulation. On this point, they rely heavily upon Wolf v. Ford Motor Co., 829 F.2d 1277 (4th Cir. 1987). In Wolf, a consumer challenged the Ford Consumer Appeals Board (FCAB) through a state common law fraud action, arguing that Ford had fraudulently represented that the FCAB was an independent and impartial apparatus for resolving disputes. After examining the federal regulatory scheme, the Fourth Circuit found that "Congress' intent to preempt state regulation ... can be inferred both from the pervasive nature of the federal regulatory scheme and from the conflict that would result if Wolf's fraud claim were allowed." Id. at 1279. Concluding that the FTC regulations "leave no room for state regulation," id., the court found that the state law fraud claim was preempted by federal law.
Both sides find support for their positions in Chrysler Corp. v. Texas Motor Vehicle Comm'n, 755 F.2d 1192 (5th Cir. 1985), in which the court considered a preemption challenge to the state-run mechanism established by the Texas lemon law. The Fifth Circuit noted that "[c]onsumer protection through warranty law is an area that has traditionally been regulated by states," and found no congressional intent "to occupy the field of informal settlement mechanisms for warranty disputes." Id. at 1205-06. The court also relied upon the savings clause in Magnuson-Moss and rejected Chrysler's argument that the clause refers only to substantive rights and remedies and not to state-authorized procedures. Id. at 1206. The court concluded by stating:
We think it plain that the preclusive effect of section 110 is limited to rules governing informal dispute resolution procedures created by private warrantors *1378 and does not affect such schemes where provided as an option for consumers by state law.
Id. Defendants assert that Chrysler Corp. establishes that the Minnesota lemon law is not preempted. Plaintiffs, on the other hand, argue that the case's holding applies only to state-run mechanisms and contend that the court found preemptive effect on procedures created by private warrantors, such as that established by the Minnesota lemon law.
The court finds that plaintiffs have not shown that federal law leaves no room for state regulation in this area. Wolf is distinguishable from the situation now before the court. The plaintiff in Wolf challenged the FCAB through a state common law fraud action; the action did not involve a state lemon law statute. The Fourth Circuit understandably concluded that "allowing consumers to challenge the operation of dispute settlement boards through state fraud actions would conflict with enforcement of the FTC regulations." 829 F.2d at 1280. The matter before this court, by contrast, concerns the power of a state legislature to attempt to enhance protections accorded consumers by federal law. Chrysler Corp. is more on point insofar as it considered a preemption challenge to a state lemon law. The Fifth Circuit found no congressional intent "to occupy the field of informal settlement mechanisms." 755 F.2d at 1206.[4]
The Chrysler Corp. court also relied upon the savings clause in Magnuson-Moss, which provides that "[n]othing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law." 15 U.S.C. § 2311(b)(1). Moreover, the preemption clause specifically limits its effect to state laws related to labeling and disclosure in warranties, 15 U.S.C. § 2311(c), and could have included informal dispute settlement procedures had Congress so intended. In Chrysler Corp. v. Armstrong, No. 83-45, slip op. at 1 (E.D.Ky. Apr. 30, 1985), the court interpreted the savings and preemption clauses and found an oral hearing requirement for informal dispute resolution mechanisms not to be preempted by Magnuson-Moss. The court found itself in agreement with a nonbinding FTC staff opinion on the issue which determined that the oral hearing requirement was not explicitly or implicitly preempted.[5]
Plaintiffs contend that the savings clause in Magnuson-Moss does not protect the Minnesota lemon law from preemption in the face of congressional intent to preempt. First, plaintiffs note that no state had enacted a lemon law at the time Magnuson-Moss was passed, thus indicating that Congress could not have had such laws in mind when it drafted the savings clause. Plaintiffs also claim that the savings clause acts to preserve state legislation with respect to other substantive rights and remedies but not with respect to the procedural requirements for informal dispute resolution mechanisms. Finally, plaintiffs contend that the Supreme Court has repeatedly held that a general savings clause cannot protect otherwise preempted state law. See, e.g., International Paper Co. v. Ouellette, 479 U.S. 481, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987) ("[W]e do not believe Congress intended to undermine this carefully drawn statute through a general savings clause....").
Although the existence of a savings clause may not preclude preemption where other indications of intent to preempt exist, plaintiffs have failed to make such a showing. The savings clause and the narrow *1379 preemption clause do indicate some congressional intent to preserve state law.[6] Moreover, the Fifth Circuit has explicitly rejected plaintiffs' attempted distinction between substantive rights and remedies and procedural requirements. Chrysler Corp., 755 F.2d at 1206. Plaintiffs have failed to establish federal preemption under the second standard.
Plaintiffs next assert that the Minnesota lemon law is preempted under the third standard. They claim that it is preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[7] In plaintiffs' view, one of the central purposes of Magnuson-Moss was to promote the voluntary development of settlement mechanisms and marketplace competition between varying warranty procedures. Plaintiffs stress that Congress declared it to be its policy to "encourage" warrantors to develop settlement mechanisms. 15 U.S. C. § 2310(a)(1). By requiring manufacturers to provide such mechanisms, the lemon law, according to plaintiffs, frustrates the congressional purpose of encouraging their voluntary development. Moreover, plaintiffs claim that the lemon law violates the balance established by Congress between the rights of manufacturers and consumers in its effort to accommodate the interests of both groups. Finally, plaintiffs argue that the lemon law interferes with the methods selected by Congress, noting that Rule 703 makes oral hearings optional.
Plaintiffs place considerable reliance upon Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), in arguing that a state statute may not eliminate an option granted under federal law. In Fidelity, the Supreme Court considered the preemptive effect of a federal regulation that granted federal savings and loan associations the right to use "due-on-sale" clauses in their mortgage contracts. Such clauses had been held to be forbidden under California law, and a federal savings and loan association argued that California law was preempted by the federal regulation. The Court agreed, finding that an actual conflict existed between federal and state law. Id. at 159, 102 S.Ct. at 3025-26. In plaintiffs' view, Fidelity requires a finding that Magnuson-Moss and Rule 703 preempt the Minnesota lemon law.
Plaintiffs' reliance on Fidelity is misplaced, however. Fidelity involved a situation where federal law gave entities an option to include such clauses while state law prohibited them from doing so. Magnuson-Moss gives manufacturers the option to establish informal dispute settlement mechanisms. The lemon law does not prohibit manufacturers from establishing such mechanisms, as was the case in Fidelity, but rather requires them to do so. Fidelity therefore does not require a finding that the lemon law is in actual conflict with federal law.[8]
*1380 Plaintiffs' reliance on Fidelity is plausible only if Magnuson-Moss is interpreted as granting to manufacturers an affirmative right not to offer settlement mechanisms. Although the legislative history suggests some concern with fairness to manufacturers, the overriding intent behind Magnuson-Moss appears to have been to enhance consumer protections. The legislative history reflects a perception on the part of Congress that consumers were inadequately protected.[9] Plaintiffs' contention that a significant congressional purpose behind Magnuson-Moss was to convey rights to manufacturers is unsupported.[10]
The Minnesota lemon law does not stand as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." On the contrary, Minnesota seeks to further the congressional goal of protecting consumers by enhancing the protections established by Magnuson-Moss. Indeed, there is some suggestion that Congress envisioned such enhancements insofar as it directed the FTC to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure...." 15 U.S.C. § 2310(a)(2) (emphasis added).[11] The lemon law therefore is not preempted under the third standard.
Plaintiffs have failed to show that the Minnesota lemon law is preempted under any of the three tests established by the Supreme Court. Defendants' motion for summary judgment on count 1 should therefore be granted, and plaintiffs' motion for summary judgment on that count should be denied.

B. Count Two  Taking
Plaintiffs also allege that the Minnesota lemon law "effects a governmental taking of private property without due process and without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Art. I, § 7 and Art. I, § 13 of the Minnesota Constitution." First Amended Complaint para. 21. By requiring manufacturers to expend their own funds to make informal dispute mechanisms available to consumers, the Minnesota lemon law allegedly effects an unconstitutional taking. Plaintiffs claim that the lemon law constitutes the "compulsory privatization of [the] distinctly public function [of] dispute *1381 resolution." Plaintiffs' Brief at 29. That the taking involves financial resources rather than real property is immaterial, according to plaintiffs. In this regard, plaintiffs rely upon Midkiff v. Tom, 471 F.Supp. 871, 884 (D.Hawaii 1979), which stated that requiring lessors to pay one-half of arbitration costs "may be a taking of property without just compensation."
Defendants respond that with the exception of Midkiff, all of the cases cited by plaintiffs concern real property rather than financial resources. With respect to Midkiff, defendants assert that the relied upon statement is dictum. In defendants' view, government regulation often imposes financial losses. They rely upon Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed. 2d 210 (1979), in which the Supreme Court stated:
[G]overnment regulation  by definition  involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by purchase.

Id. at 65, 100 S.Ct. at 326 (emphasis in original). The Andrus Court concluded:
It is true that appellees must bear the costs of these regulations. But, within limits, that is a burden borne to secure "the advantage of living and doing business in a civilized community." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 422 [43 S.Ct. 158, 163, 67 L.Ed. 322] (1922) (Brandeis, J., dissenting).
Id. at 67, 100 S.Ct. at 327-28. Finally, defendants assert that any economic deprivation is likely to be minimal, relying upon evidence that arbitrations are relatively inexpensive and rarely required under informal dispute settlement mechanisms.
Although the parties have addressed the merits of plaintiffs' taking claim, the court finds that "it would be premature to consider this contention on the present record." Pennell v. City of San Jose, ___ U.S. ___, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1988). The Supreme Court's recent decision in Pennell stressed that it is "particularly important in takings cases to adhere to our admonition that `the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.'" Id. (quoting Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 294-95, 101 S.Ct. 2352, 2369-70, 69 L.Ed.2d 1 (1981)). Nothing in the record before the court indicates that an actual consumer complaint brought to an informal dispute resolution mechanism has imposed financial costs on plaintiffs under the new law. The consequences of the law need to be shown by specific facts. There is presently not "a sufficiently concrete factual setting for the adjudication of the takings claim [plaintiffs] raise...." Id. 108 S.Ct. at 857. Plaintiffs' taking claim is premature and should therefore be dismissed without prejudice.
Accordingly, pursuant to the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:
1. The motion of defendants for summary judgment is granted with respect to count 1, and that claim is dismissed with prejudice. Count 2 is dismissed without prejudice.
2. The motion of plaintiffs for summary judgment is denied.
LET JUDGMENT BE ENTERED ACCORDINGLY.
NOTES
[1] Plaintiffs' original complaint included a number of other constitutional and statutory claims that have not been asserted in the first amended complaint.
[2] At the present time, four arbitration mechanisms consider claims of Minnesota consumers. These are the Better Business Bureau Autoline Program, the Chrysler Corporation Customer Satisfaction Arbitration Board, the Ford Motor Company Consumer Appeals Board, and the American Automobile Association program. The Better Business Bureau Autoline Program handles arbitrations for a number of manufacturers, including some of the plaintiff manufacturers. Other plaintiff manufacturers have elected to negotiate directly with consumers and litigate the claims in state court if necessary. See Affidavit of Robert John Marcroft para. 2.
[3] Numerous other states have lemon laws of some type. Four other states also require manufacturers to participate in arbitration programs. Connecticut, Massachusetts, and Texas operate the programs themselves. Kentucky, like Minnesota, requires manufacturers to participate in a privately operated program, and allows consumers to make an oral presentation if requested. Unlike Minnesota, however, Kentucky does not require programs to comply with Rule 703. See Affidavit of Robert John Marcroft paragraphs 3-7.
[4] If the court were to accept the distinction between state-run programs and state-regulated manufacturer mechanisms as urged by plaintiffs, then the Fifth Circuit's statement concerning "procedures created by private warrantors" is dictum.
[5] The FTC staff opinion stated:

Magnuson-Moss makes it clear that the preservation of consumer rights and remedies under state law is paramount: it not only sets no limitation on the savings clause for state-created rights and remedies, but it expressly subordinates the preemption provision to the savings clause. Also, the legislative history of the federal law shows that Congress anticipated additional state legislation even in areas where Congress had acted.
P. 4 (footnote omitted).
[6] The FTC has interpreted the savings and preemption clauses as follows:

In general, the protections of the Warranty Act are in addition to, rather than in lieu of, warranty rights and remedies under State law. Only a very narrow class of State requirements are "preempted".... [W]hile allowing the use of uniform warranty documents is a goal of [the preemption clause], this goal is subordinate to that of permitting States to fashion their own scheme o[f] warranty rights and remedies which may be more protective than the minimum level of protection of the Federal Act.... Thus, a State provision which merely creates consumer rights or remedies, without providing for disclosure of them, would be entirely unaffected by the Warranty Act; that is, it would not be subject to "preemption."
43 Fed.Reg. 50,737-38 (Oct. 31, 1978) (footnotes omitted).
[7] With less emphasis, plaintiffs also assert that the lemon law is preempted because "compliance with both federal and state regulations is a physical impossibility." On this point, plaintiffs note that FTC regulations forbid manufacturers to impose a fee on consumers for use of a dispute resolution mechanism, while the lemon law allows the imposition of a fee. By exercising their right under Minnesota law to charge a fee, plaintiffs claim that they would be in violation of federal law. As noted by Judge Doty, however, plaintiffs could comply with both by electing not to impose a fee. Slip op. at 6.
[8] Fidelity also involved a clear indication by the agency that its regulation was intended to preempt state law. The Court noted:

In the preamble accompanying final publication of the due-on-sale regulation, the Board explained its intent that the due-on-sale practices of federal savings and loans be governed "exclusively by Federal law." 41 Fed.Reg. 18286, 18287 (1976). The Board emphasized that "[f]ederal associations shall not be bound by or subject to any conflicting State law which imposes different ... due-on-sale requirements." Ibid.
458 U.S. at 147, 102 S.Ct. at 3019 (footnote omitted).
[9] The House Report accompanying the Act noted:

Paralleling the growth of acquisition of consumer products has been a growing concern of the American consumer with the quality and durability of many of those products. Another growing source of resentment has been the inability to get many of those products properly repaired and the developing awareness that the paper with the filigree border bearing the bold caption "Warranty" or "Guarantee" was often of no greater worth than the paper it was printed on. Indeed, in many cases where a warranty or guarantee was ostensibly given the old saying applied "The bold print giveth and the fine print taketh away." For the paper operated to take away from the consumer the implied warranties of merchantability and fitness arising by operation of law leaving little in its stead. H.R.Rep. No. 1107, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 7702, 7706. See also Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1061 (5th Cir.1984) ("`The draftsmen [of Magnuson-Moss] believed that warranties on consumer products often were too complex to be understood, too varied for consumers to make intelligent market comparisons, and too restrictive for meaningful warranty protection.'") (quoting Schroeder, Private Actions under the Magnuson-Moss Warranty Act, 66 Calif.L.Rev. 1, 2 (1978)).
[10] As such, this case is distinguishable from Michigan Canners & Freezers Ass'n v. Agricultural Mktg. & Bargaining Bd., 467 U.S. 461, 471, 104 S.Ct. 2518, 2544, 81 L.Ed.2d 399 (1984), a case relied upon by plaintiffs, in which the Supreme Court found that "the question of the producer's free choice was a central focus of congressional attention during the passage of the Act."
[11] Plaintiffs contend that this language only suggests that manufacturers may voluntarily decide to establish additional requirements. In any event, the language indicates that Congress did not view the FTC regulations as exclusively governing such mechanisms.