DIXON, Chief Justice.
This discovery dispute arose in a redhibition action based ón alleged defects in a car purchased by plaintiff Blanche H. Bou-dreaux and manufactured by defendant Ford Motor Company. In interrogatories[1] to Ford, Mrs. Boudreaux requested, among other things, copies of all consumer statements filed with the Ford Consumer Appeals Board pertaining to 1985/1986½ Ford Escorts. Ford initially objected to this request as being unlimited in scope and later objected to the interrogatories as seeking irrelevant and confidential information as well. Pursuant to these interrogatories, however, Ford did provide plaintiffs with copies of their vehicle repair orders, applicable technical service bulletins, documents generated by their action before the Ford Consumer Appeals Board, and recall information pertaining to the plaintiffs’ individual Ford Escort.
After failing to reach a satisfactory compromise concerning the requested consumer complaint statements, the plaintiffs brought a motion to compel discovery and for sanctions before the Sixteenth Judicial District Court for the Parish of St. Mary. *1215 At a hearing on the motion, the trial judge ordered Ford Motor Company to produce the information requested within sixty days. The judge also assessed Ford $300.00 as sanctions, in addition to the costs of the rule. The First Circuit Court of Appeal let stand the trial court’s order granting access to Ford Consumer Appeals Board records but ordered the removal of customer names, addresses, and telephone numbers.
Writs were granted to determine whether the Ford Consumer Appeals Board customer complaint records are confidential under the Louisiana Trade and Commerce Act and the regulations adopted by the Federal Trade Commission pursuant to the Magnuson-Moss Act. Although we find that the records are not confidential under the Louisiana Trade and Commerce Act, we determine that the doctrine of comity allows the enforcement of the Federal Trade Commission regulations that permit informal dispute settlement mechanism to restrict access to consumer records. Thus, the records of consumer complaints sought by the plaintiffs are confidential and may not be discovered.
These same Federal Trade Commission regulations, however, also mandate public access to statistical summaries and annual audit reports. These summaries and reports are clearly discoverable by the plaintiffs. The permissive terms of these regulations allow the Ford Consumer Appeals Board to restrict auditor access to the names of complainants and the identity of products involved. Except for a brief excerpt from the Ford Consumer Appeals Board policy manual that does not specifically address auditor access, the record before this court contains no evidence that the defendant has taken full advantage of these confidentiality provisions to restrict auditor access. In the absence of such a showing, there is no reason why such information should be withheld from the plaintiffs. Consequently, the decisions of the courts below are vacated and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.
1. Confidentiality of Ford Consumer Appeals Board Records Under Louisiana Law
In January 1975, Congress passed the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301-2312 (1982). In enacting this legislation, Congress dealt with the problem of making warranties on consumer products more readily understood and enforceable. The legislation also provided the Federal Trade Commission with means to protect consumers. See Magnuson-Moss Warranty — Federal Trade Comm’n Improvement Act, Pub.L. No. 93-637, 1974 U.S.Code Cong.Admin.News (88 Stat.) 7702 (codified at 15 U.S.C. §§ 2301-2312); see also Boelens v, Redman Homes, Inc., 748 F.2d 1058, 1061-62 (5th Cir.1984) (explaining purpose and general operation of the Act’s provisions). Under the rulemaking authority granted to it by the Act, the Federal Trade Commission instituted regulations establishing guidelines and minimal requirements for informal dispute settlement procedures. Rules, Regulations, Statements and Interpretations under the Magnuson-Moss Warranty Act, 16 C.F.R. §§ 700.1-703.8 (1988). At issue in this discovery dispute is the confidentiality of records or consumer complaints presented to the Ford Consumer Appeals Board,[2] one *1216 of the informa] dispute settlement mechanisms established pursuant to these regulations. The Federal Trade Commission regulations require that statistics complied by the Ford Consumer Appeals Board be available to everyone for inspection and copying. Id. § 703.8(a). So too must be the report of the required annual audit, Id. § 703.8(b). All other Ford Consumer Appeals Board records “may be kept confidential, or made available only as such terms and conditions, or in such form as the Mechanism shall permit.” Id. (Emphasis added). But whatever the warrantor’s policy concerning the confidentiality of informal dispute settlement proceedings, the regulations require that “the policy ... be applied uniformly to all requests for access to or copies of such records.” Id. § 703.8(c). The regulations also mandate that either party to a dispute be provided with access to and copies of any and all records relating to the dispute. Id. § 703.8(e).
According to an Ford Consumer Appeals Board internal operations manual submitted by Ford and dated April 1, 1986, the Ford Consumer Appeals Board policy developed pursuant to these regulations describes customer complaint files as being
“confidential Company documents that should not be released to most outside sources. However, copies of all documents in an FCAB file must be provided to any of the parties involved in the case who request them. Furthermore, an independent auditing firm contracted by Ford Motor Company ... will be allowed access to the case files for the purpose of annual audits.” Applicant’s brief, Attachment 5. (Emphasis added).
Defendant Ford Motor Company argues that Congress, in the very words of the statute, intended for warrantors to keep arbitration mechanism records confidential. On the contrary, the Magnuson-Moss Act merely delegates rulemaking power to the Federal Trade Commission.[3] The Federal Trade Commission regulations developed pursuant to the Act allow warrantors to restrict access to mechanism records under specified conditions: the mechanism’s policies may direct the annual auditor to “delete name of parties to disputes, and identity of products involved” from the audit report. 16 C.F.R. § 703.8(c). Indeed, the permissive language of § 703.8(b), see supra note 2, rather than indicating a legislative determination that the records remain confidential, leaves this issue up to the warrantors.
Ford also asserts that the regulations themselves are part of Louisiana’s so-called “Lemon Law.” Contrary to Ford’s assertions, Louisiana’s “Lemon Law” contains no provisions that mandate confidentiality of Ford Consumer Appeals Board records. The 1984 Louisiana legislature enacted Act 228 of 1984, the new Chapter 27 of Title 51 of the Louisiana Revised Statutes entitled “Motor Vehicle Warranties.” R.S. 51:1941-1948. The new act expanded remedies for breach of warranty by automobile manufacturers and dealers but required dissatisfied customers to exhaust manufacturer established informal dispute settlement procedures established under the Federal Trade Commission regulations before resorting to newly provided state remedies. R.S. 51:1944(D). The Federal Trade Commission regulations established pursuant to the Magnuson-Moss Act, however, were not adopted by the Louisiana legislature when it enacted *1217 the Louisiana Trade and Commerce Act. See 1984 La. Acts 513, No. 228, § 1. Nor have they been enacted by a subsequent amendment to that statute. See 1986 La. Acts 762, No. 553, § 1. Merely reprinting one section of these regulations in the Revised Statutes does not make them law.
2 Preemption of State Law by Federal Trade Commission Rules Governing Informal Dispute Settlement Procedures
Defendant Ford Motor Company argues that even if the Federal Trade Commission regulations are not part of state law, the regulations nevertheless preempt state law under the supremacy clause of the United States Constitution. U.S. Const, art. VI, cl. 2. Preemption law is well settled. Congress can expressly delineate the extent to which it intends to preempt state law. See, e.g., Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm’n., 461 U.S. 190, 203-04, 103 S.Ct. 1713, 1722, 75 L.Ed. 2d 752, 765 (1983). In the absence of such express delineation, the courts may determine that Congress has shown an intent to occupy the field entirely. Fidelity Fed. Sav. & Loan Ass’n. v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed. 2d 664, 675 (1982). Even when Congress has not completely occupied the field, it can preempt any state laws that conflict with federal law, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256-57 (1963), or that obstruct the accomplishment of Congress’ objectives. Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580, 589 (1984). It is also well settled that Congress can delegate its lawmaking power to administrative bodies, Arizona v. California, 373 U.S. 546, 594, 83 S.Ct. 1468, 1494-95, 10 L.Ed.2d 542, 574 (1963), and that the regulations developed by those bodies may preempt state law. Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1984).
The protection of consumers through regulations of warranty law is a traditional state function. As such, it requires a “clear statement of congressional intent” in order for state remedies to be preempted by federal laws. Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305,1309, 51 L.Ed.2d 604, 614 (1977). The Magnuson-Moss Act offers no such statement. On the contrary, § 111 of the Act preserves state law rights and remedies for consumers: “Nothing in this Chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law.” 15 U.S.C. § 2311(b)(1) (1982).
Ford argues, nevertheless, that any conflicts between the Federal Trade Commission regulations and state law or jurisprudence must be resolved in favor of the Federal Trade Commission regulations because federal courts have determined that these regulations preempt state law. This is not the case. The federal courts have determined that these regulations preempt only those state laws that would affect mechanism operations. In Wolf v. Ford Motor Co., 829 F.2d 1277, 1279 (4th Cir. 1987), the United States Fourth Circuit Court of Appeals determined that the Federal Trade Commission regulations are “extensive and address all facets of the mechanism’s operation. They leave no room for state regulation.” The Wolf case, however, presented an attack on the fairness and legitimacy of the dispute mechanism itself; the plaintiff had brought an action against Ford based on common law fraud and under Virginia’s “lemon law.” Wolf succeeded on his statutory claim, but the appellate court upheld the trial court’s dismissal of his common law fraud claim against Ford because the Magnuson-Moss Act provides for Federal Trade Commission oversight of mechanisms such as the Ford Consumer Appeals Board. The Federal Trade Commission’s detailed regulations insure the independent nature of private dispute settlement mechanisms. To have allowed Wolf to test whether the Ford Consumer Appeals Board was independent and unbiased under Virginia’s common law fraud standard would have conflicted with Federal Trade Commission monitoring and *1218 enforcement regulations.[4] The regulations clearly indicate that any attack on a mechanism’s impartiality must be made through established administrative channels. Id. at 1280, n. 3.
The regulations do not, however, prevent states from establishing their own dispute resolution procedures. The United States Fifth Circuit Court of Appeals, in Chrysler Corp. v. Texas Motor Vehicle Comm’n., 755 F.2d 1192, 1205-06 (5th Cir. 1985), found “no clear statement” in the Act or in its legislative history that Congress intended to exclude state informal dispute settlement mechanisms from operating. The Fifth Circuit specifically rejected Chrysler’s contention that the only rights and remedies saved by § 111 of the Act, see supra, were substantive rather than procedural ones. Id. at 1206. Instead, the court determined that “the pre-clusive effect of section 110 [of the Act] is limited to rules governing informal dispute resolution.” Id.
Similarly, the United States Court of Appeals, District of Columbia Circuit, determined that the Magnuson-Moss Act calls for the application of state written and implied warranty law, except in those specific instances in which Magnuson-Moss prescribes a regulating rule. Walsh v. Ford Motor Co., 807 F.2d 1000 (D.C.Cir. 1986), cert. denied, — U.S. —, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987). The Act and the rules derived pursuant to it do not create additional federal law. Id. at 1012.
Thus, the preemption issue before this court is whether the provisions in § 703.8 that allow informal dispute resolution mechanisms to develop their own policies concerning confidentiality of consumer records form part of the rules governing the mechanism process. The Federal Trade Commission report accompanying the regulations indicates that the Federal Trade Commission intended § 703.8 to “strike a balance between the warrantor’s and Mechanism’s need for confidentiality and the competing need for public access and scrutiny of Mechanism operations that is implicit in Section 110(a)(4) of the [Mag-nuson-Moss] Act.” Rules, Regulations, Statements and Interpretations Under Magnuson-Moss Warranty Act, 40 Fed. Reg. 60,168, 60,214 (1975). Section 703.-8(b), which allows the Mechanism to keep its records confidential, elicited considerable comment and debate during the rule-making process. Among the objections consumer representatives voiced was the basic unfairness of allowing a warrantor access to the consumer complaint records, yet denying the same access to consumers. Id. at n. 256. Consumer representatives also objected to the confidentiality provision because, by restricting access to the mechanism records, the provision keeps consumers from utilizing precedents to determine whether claims are worth pursuing. Id. Additional objections centered around the usefulness of the information to consumer agencies and to consumers, the research value of the information, and the obligation of the Federal Trade Commission to fulfill its own educational function through the broad dissemination of information. On the other hand, representatives of warrantors strongly supported the confidentiality proposal, expressing the concern that competitors and others could use the identities of the consumers to thwart good faith settlements that might be pending. Id. at 60,214. The Commission noted that representatives of several existing mechanisms took the position that voluntary warrantor participation in informal dispute settlement mechanisms would be reduced if the records of consumer complaints were not made confidential. Id.
*1219 The provisions governing confidentiality of Ford Consumer Appeals Board records are found in the same section as those rules that govern the mechanisms themselves. See 16 C.F.R. §§ 703, 703.8. The rules require disclosure of statistical summaries, audit reports and individual dispute files. The permissive language of § 703.8(b), see supra note 2, allows warran-tors and the mechanisms established pursuant to these regulations to determine the extent to which the public may have access to consumer complaints. In adopting the final version of the rules, the Federal Trade Commission determined that § 703.8(b) represents “a fair balance between the warrantors’ need for confidentiality and the competing need for public access and scrutiny of Mechanism operations.” Id.
It is not necessary, however, for this court to determine whether the § 703.8 provisions form a preemptive regulating rule because the doctrine of the comity of nations is applicable to this case. Justice Gray’s early definition of comity characterized it as “neither a matter of absolute obligation ... nor of mere courtesy and good will.... [I]t is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation....” Hilton v. Guyot, 159 U.S. 113,163-64,16 S.Ct. 139,143, 40 L.Ed. 95, 108 (1895). Comity has also been described as being “no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy, or prejudicial to its interests.” Bank of Augusta v. Earle, 38 U.S. (13 Pet.) 519, 589,10 L.Ed. 274, 308 (1839). Unlike the judicial concept of comity that underlies “Our Federalism,” see Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the comity of nations doctrine focuses not on relationships between judges but between independent sovereign states. Felder v. Estelle, 693 F.2d 549 (5th Cir.1982) (citing United States ex rel. Trantino v. Hatrock, 563 F.2d 86, 103 (3d Cir.1977), cert, denied, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978)). The concept of comity of nations can thus exist within our nation as an embodiment of a system that is sensitive to the interests of both state and national governments.
As noted above, the Federal Trade Commission regulations governing confidentiality reflect the Commission’s determination that restricting access to mechanism records effects a fair balance between the needs of the warrantors and the public. Under the doctrine of comity, requiring the plaintiffs in this case to observe the restrictions § 703.8 imposes on their discovery is neither contrary to state policy nor prejudicial to state interests.
These same regulations, however, clearly mandate that the Ford Consumer Appeals Board audit reports and statistical summaries be made available to the plaintiffs. Those regulations also allow Ford and the Ford Consumer Appeals Board to limit auditor access to consumer names and product identities. In their brief before this court, the Boudreauxs assert that the Ford Motor Company should not be able to delete the names and product identifications from these reports if they have not done so uniformly and consistently as the regulations require. The record contains no evidence that the Ford Consumer Appeals Board has availed itself of the regulatory option to restrict the auditors’ access. Absent such a showing, there is no reason why the plaintiffs should be so restricted.
Accordingly, there is now judgment in favor of plaintiffs and against defendants; the decisions of the courts below are vacated, and this case is remanded to the district court for further proceedings not inconsistent with this opinion, at the cost of the defendants.
LEMMON, J., concurs and assigns reasons.
CALOGERO, J., concurs and joins in the reasons assigned by Lemmon, J.
DENNIS, J., dissents.
MARCUS, J., dissents and assigns reasons.

. The Boudreauxs requested the, following:
"(1) Please state the names, current residences and business addresses, and phone numbers of each consumer in the region containing Louisiana who has filed a complaint with the Ford Consumer Appeals Board relative to a 1985/1985½ Ford Escort within the last fifteen (15) months. Please attach a copy of each 'customer statement’ to your answer hereto.
(2)For each consumer complaint listed above, please give the zone, division, and name of the appeals board referee who handled the complaint; the action taken thereon by Ford; and the final outcome of the complaint; that is, whether the recommendation of the appeals board was accepted mutually, rejected mutually or unilaterally, or ended in formal litigation.
(3) For each complaint that ended with formal litigation, please provide the base number and court in which the suit was filed.
(4) Please give details of any past, present, or anticipated recalls involving the 1985/1986½ Ford Escorts for any reason.
(5) Please answer questions 1, 2, and 3 with reference to the entire area of the United States and/or the entire area in which Ford sells or sold 1985/1986½ Ford Escorts.”

. "Section 703.8 Openness of records and proceedings.
(a) The statistical summaries specified in § 703.6(e) of this part shall be available to any person for inspection and copying.
(b) Except as provided under paragraphs (a) and (e) of this section, and paragraph (c) of § 703.7 of this part, all records of the Mechanism may be kept confidential, or made available only on such terms and conditions, or in such form, as the Mechanism shall permit.
(c) The policy of the Mechanism with respect to records made available at the Mechanism’s option shall be set out in the procedures under § 703.5(a) of this part; the policy shall be applied uniformly to all requests for access to or copies of such records.
(d) Meetings of the members to hear and decide disputes shall be open to observers on reasonable and nondiscriminatory terms. The identity of the parties and products involved in disputes need not be disclosed at meetings.
(e) Upon request, the Mechanism shall provide to either party to a dispute:
(1) Access to all records relating to the dispute; and
*1216 (2) Copies of any records relating to the dispute, at reasonable cost.
(f) The Mechanism shall make available to any person upon request, information relating to the qualifications of Mechanism staff and members."
[[Image here]]
"Section 703.7
(c) A report of each audit under this section shall be submitted to the Federal Trade Commission, and shall be made available to any person at reasonable cost. The Mechanism may direct its auditor to delete names of parties to disputes, and identity of products involved, from the audit report."

. 15 U.S.C. §§ 2309-2310 (1982). Section 110(a)(2) of the Act provides that "[t]he commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure_” Magnuson-Moss Warranty Act, Pub.L. No. 93-637, § 110(a)(2), 88 Stat. 2190 (1975).

. Id. at 1280. The court specifically held that the endorsement of private dispute settlement mechanisms by the Magnuson-Moss Act, when joined with that Act’s directive to the Federal Trade Commission to prescribe minimum requirements for such mechanisms, "evince a congressional intent to reserve to the federal regulatory body the authority to supervise whether the mechanisms are created and operated fairly." Id. at 1279. (Emphasis added). The court agreed that allowing consumers like Wolf to "test the bona fide nature and validity of private dispute settlement mechanisms ... under the law of each state would frustrate completely the goal of national uniformity painstakingly designed by federal statute and regulation." Id. at 1280.