AUTOMOBILE IMPORTERS OF AMER-
ICA, INC.; Alfa Romeo, Inc.,; Ameri-
can Isuzu Motors, Inc.,; BMW of North
America, Inc.,; Hyundai Motor Co.
America; Jaguar Cars, Inc.; Mazda
Motors of America (Central), Inc.; Mit-
subishi Motor Sales of America, Inc.;
Nissan Motor Corporation in U.S.A.;
Peugeot Motors of America, Inc.;
Porsche Cars of North America, Inc.;
Rolls Royce Motors, Inc.; Saab–Scania
of America, Inc.; Suzuki of America
Automotive Corporation; Volvo of
North America Corporation; and Yugo
of America, Inc., Appellants,

v.

STATE OF MINNESOTA and the
Attorney General for the State
of Minnesota, Appellees.

Chrysler Corporation,
Amicus/Appellant.

No. 88–5131.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 19, 1988.

Decided March 17, 1989.

John M. Mason, Minneapolis, Minn., for appellants.

Stephen P. Kilgriff, St. Paul, Minn., for appellees.

Before HEANEY,* Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

The appellants, an organization of foreign automobile manufacturers ("Automobile Importers"), brought suit in the United States District Court for the District of Minnesota, challenging a Minnesota consumer law. The law requires automobile manufacturers to participate in informal dispute resolution, including oral hearings at the consumer's option, and permitting the dispute resolution mechanisms to charge consumers a fee for their use. The district court held that the Minnesota law is not preempted by the Magnuson–Moss

---

* The Honorable Gerald W. Heaney assumed sen-    ior status on December 31, 1988.

Warranty Act. The plaintiffs appeal that decision to this Court. We affirm.

## I. BACKGROUND

### A. The Magnuson–Moss Warranty Act

In 1974, Congress enacted the Magnuson–Moss Warranty Act governing written warranties on consumer products. 15 U.S. C. §§ 2301 *et seq.* Congress, recognizing that American consumers have been confused and misled by warranties,[1] adopted that Act to make warranties on consumer products more readily understandable and enforceable, and to provide the Federal Trade Commission (FTC) with means to better protect consumers. H.R.Rep. No. 1107, 93d Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7702. To achieve these goals section 110 of the Act encourages warrantors to establish informal dispute settlement mechanisms whereby consumer complaints are fairly and expeditiously settled.[2] 15 U.S.C. § 2310(a)(1). Congress recognized that the Magnuson–Moss Warranty Act would cre-

ate conflicts with state law rights and remedies and, therefore, set forth language to resolve such conflicts—broad savings clause with narrow preemption provisions.[3]

Pursuant to 15 U.S.C. § 2310(a)(2) of this Act, the FTC adopted Rule 703 to promulgate "minimum requirements" intended to promote the independence of informal dispute resolution mechanisms. *See generally* 16 C.F.R. Part 703; H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7722. Rule 703 permits manufacturers to require consumers to use its dispute mechanism before the consumer can seek direct redress from the warrantor. The Rule permits an oral hearing only if both parties consent. Each mechanism must be staffed and funded at sufficient levels to ensure fair and expeditious resolution. Each must also develop written operating procedures and make them available to consumers. Individual members of a mechanism cannot be a party, or an agent of a party, to the dispute. The mechanism will investigate disputes and must permit each party an

---

1. S.Rep. No. 151, 93d Cong., 1st Sess. 6 (1973).

2. 15 U.S.C. § 2310(a) (remedies in consumer disputes) provides in part:
   (1) Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.
   (2) The [FTC] shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies. Such rules shall provide for participation in such procedure by independent or governmental entities.
   (3) One or more warrantors may establish an informal dispute settlement procedure which meets the requirements of the Commission's rules under paragraph (2). If—
   (A) a warrantor establishes such a procedure,
   (B) such procedure, and its implementation, meets the requirements of such rules, and
   (C) he [or she] incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,
   then (i) the consumer may not commence a civil action (other than a class action) under

subsection (d) of this section unless he [or she] initially resorts to such procedure * * *.

3. Section 2311(b) and (c) provides:
   (b) Rights, remedies, and liabilities
   (1) Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law.
   (2) Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury.
   (c) State warranty laws
   (1) Except as provided in subsection (b) of this section and in paragraph (2) of this subsection, a State requirement—
   (A) which relates to labeling or disclosure with respect to written warranties or performance thereunder;
   (B) which is within the scope of an applicable requirement of sections 2302, 2303, and 2304 of this title (and rules implementing such sections), and
   (C) which is not identical to a requirement of section 2302, 2303, or 2304 of this title (or a rule thereunder),
   shall not be applicable to written warranties complying with such sections (or rules thereunder).

opportunity to contradict facts submitted by the other party.

### B. Minn.Stat. § 325F.665, subd. 6 (1987)

In 1987, the Minnesota Legislature amended the Minnesota lemon law.[4] Appellants challenge three aspects of the Minnesota law as being preempted by federal law: the requirement that automobile manufacturers doing business in Minnesota participate or operate such a mechanism; the provision of the law that permits either party, without the other's consent, to make oral presentations; and the provision allowing a consumer to be charged a fee for the mechanism.

## II. DISTRICT COURT OPINION

Automobile Importers commenced an action in district court challenging the Minnesota law. They argued that the Magnuson–Moss Warranty Act leaves no room for state regulation of informal dispute resolution mechanisms, citing *Wolf v. Ford Motor Co.*, 829 F.2d 1277 (4th Cir.1987). The appellants also argued that *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) was controlling because the state law limited a federal option. The district court disagreed, relying instead on *Chrysler Corp. v. Texas Motor Vehicle Comm'n*,

755 F.2d 1192 (5th Cir.1985), and distinguishing *Fidelity Federal*. In sum, the district court found that the Minnesota lemon law is not preempted under the established tests and, therefore, granted summary judgment to the State of Minnesota.[5]

## III. DISCUSSION

### A. Comprehensiveness of the Federal Scheme

A state law is preempted when the federal regulatory scheme is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *see International Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987). In other words, the regulation must be sufficiently pervasive to demonstrate an intention on the part of Congress that it wished to displace state law.

Automobile Importers argue that such an intention can be inferred from the legislative history of the Magnuson–Moss Act. They argue that a compromise was struck in Congress between the interests of the warrantors and the interests of consumers, and that permitting Minnesota's private dispute resolution mechanism to stand upsets that compromise. Such a compromise

---

**4.** Minn.Stat. § 325F.665, sub. 6, provides in part:

(a) Any manufacturer doing business in this state, entering into franchise agreements for the sale of its motor vehicles in this state, or offering express warranties on its motor vehicles sold or distributed for sale in this state shall operate, or participate in, an informal dispute settlement mechanism located in the state of Minnesota which complies with the provisions of the Code of Federal Regulations, title 16, part 703, and the requirements of this section, the provisions of subdivision 3 concerning refunds or replacement do not apply to a consumer who has not first used this mechanism before commencing a civil action, unless the manufacturer allows a consumer to commence an action without first using this mechanism.

\* \* \* \* \* \*

(e) The informal dispute settlement mechanism shall allow each party to appear and make an oral presentation in the state of Minnesota unless the consumer agrees to sub-

mit the dispute for decision on the basis of documents alone or by telephone, or unless the party fails to appear for an oral presentation after reasonable prior written notice. If the consumer agrees to submit the dispute for decision on the basis of documents alone, then manufacturer or dealer representatives may not participate in the discussion or decision of the dispute.

\* \* \* \* \* \*

(i) A consumer may be charged a fee to participate in an informal dispute settlement mechanism required by this section, but the fee may not exceed the conciliation court filing fee in the county where the arbitration is conducted.

**5.** The district court also held that because the consequences of the Minnesota lemon law cannot yet be shown with specific facts, the appellants' taking claim is premature and was dismissed without prejudice. *Automobile Importers of America, Inc. v. State of Minnesota*, 681 F.Supp. 1374, 1381 (D.Minn.1988) Appellants do not appeal this determination.

may have well occurred, *see* FTC Statement of Basis and Purpose, 40 Fed.Reg. 60168, 60193 (Dec. 31, 1975), but Automobile Importers fail to provide sufficient evidence to support their assertion that an aspect of this compromise was the preemption of supplemental state regulation in the area of private dispute resolution mechanisms.

Both the Fourth Circuit and the Fifth Circuit have faced the issue of preemption of state law by the Magnuson–Moss Warranty Act. In *Wolf v. Ford Motor Co.*, 829 F.2d 1277 (4th Cir.1987), the plaintiff alleged state common law that Ford had fraudulently represented that its private dispute mechanism, established pursuant to the Act, was an independent and impartial apparatus for resolving disputes between Ford and its customers. The character of the action required the court to determine if the mechanism operated fairly. The Fourth Circuit held that the state common law fraud action was preempted on three alternative grounds: (1) Congress' intent to preempt state regulation of informal dispute resolution mechanisms is inferred from the pervasive nature of the federal regulatory scheme; (2) allowing consumers to challenge the operation of dispute settlement mechanisms through state fraud actions would conflict with enforcement of the FTC regulations; and (3) to permit consumers to test the bona fide nature and validity of private dispute settlement mechanisms under the law of each state would completely frustrate the goal of national uniformity painstakingly designed by federal statute and regulation. The *Wolf* court noted, with particular importance, that the comprehensive details of the regulation demonstrate that any attack on the fairness or legitimacy of a dispute resolution mechanism must be through the FTC. *Id.* at 1279 n. 3.

In the Fifth Circuit case of *Chrysler Corp. v. Texas Motor Vehicle Comm'n.*, 755 F.2d 1192 (5th Cir.1985), Chrysler challenged the Texas lemon law, which granted, inter alia, automobile purchasers a pro-

ceeding before a commission made up of automobile dealers and consumers to assert certain new warranty remedies. The Fifth Circuit held that federal law does not occupy the field of informal dispute resolution for warranty disputes. *Id.* at 1203–04.[6] The court based this finding on several conclusions: (1) consumer protection through warranty law is an area traditionally regulated by states—requiring a "clear statement" of Congress' intent to preempt; (2) neither the language of the Act nor the legislative history provide any such "clear statements;" and (3) section 111 of the Act preserves for consumers any rights or remedies created by state law. *Id.* at 1205–06. The Fifth Circuit summed up the effect that the Magnuson–Moss Warranty Act has on state-created informal dispute resolution mechanisms:

> We think it plain that the preclusive effect of section 110 is limited to rules governing informal dispute resolution procedures created by private warrantors and *does not affect such schemes where provided as an option for consumers by state law.*

*Id.* at 1206 (emphasis added).

We agree with the Fifth Circuit that to infer preemption in an area traditionally regulated by the states—consumer protection through warranty law—requires a "clear statement" of occupation. We find no "clear statements" of congressional intent to preempt here. The six pages of regulations are far from pervasive. The special competence of the FTC to deal with unfair trade practices is unpersuasive in light of the states' traditional role in this area. The fact that Congress gave some regulatory authority to the FTC over informal dispute resolution mechanisms fails, without any other supporting evidence, to demonstrate that Congress mandated national uniformity regarding such mechanisms.

The language, structure and history of the Act emphasize its supplemental, rather than preemptive nature. Congress autho-

---

**6.** The Fifth Circuit also held that the Texas scheme did not conflict directly with the Magnuson–Moss Warranty Act, nor did the Texas law interfere with the attainment of the full purposes and objectives of Congress in enacting section 110. *Texas Motor*, 755 F.2d at 1206.

rized the FTC to adopt only "minimum requirements," implying that it intended to leave room for further state regulation. The Act's structure is supplemental: a broad savings clause followed by language creating specific, narrow areas of preemption. By explicitly delineating a limited area of preemption, Congress intended to permit supplemental state regulation in areas outside of that delineation. Congress could have easily included informal dispute resolution mechanisms in its list of areas specifically preempted, but it failed to do so. The savings clause—"any right or remedy of any consumer under State law" —confirms Congress' intention to permit supplemental state regulation. Moreover, the legislative history supports the view that Congress found it necessary only to supplement present state law and not replace it. Conf.Rep. No. 1408, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7759. *See also*, H.R.Rep. No. 1107, 93rd Cong., 2d Sess. *reprinted in*, 1974 U.S.Code Cong. & Admin.News 7726 (the expansion of the FTC's jurisdiction in Title II is not intended to occupy the field of consumer protection). Finally, the FTC, in an informal opinion letter to the Attorney General of Kentucky, confirmed the view that the Magnuson–Moss Warranty Act was intended merely to supplement state law.[7]

We agree with the Fifth Circuit and the district court that Congress has not fully

7. The relevant parts of the FTC opinion letter provide:

> Kentucky's requirement of oral hearings clearly is not expressly preempted by the Warranty Act. Section 111(c)(1) of that Act states the *very limited circumstance* in which a state requirement will be preempted. That is where: (1) the state requirement concerns labeling or disclosure of written warranties or of performance under written warranties; (2) the requirement falls within the scope of a requirement of Sections 102, 103 or 104 of the Warranty Act or a rule thereunder, that is, of the federal labeling or disclosure provisions; *and* (3) the state requirement is not identical to the federal requirement. The Kentucky requirement for oral hearings in dispute settlement mechanisms is not a labeling or disclosure requirement. Also, it does not fall within the scope of Sections 102, 103, or 104 of the federal Act or release thereunder. It falls solely within the scope of Section 110 and of the rule implementing that section. There is no express provision in the federal Act for preemption of such a requirement.
>
> * * * * * *
>
> STATE LAW SAVINGS CLAUSE: SECTION 111(b)(1)
>
> In addition to the express delineation of the intended area of preemption in Section 111(c)(1), Congress created an express savings clause for state laws in Section 111(b)(1). That section preserves "any right or remedy of any consumer under State law...." The Kentucky procedure is a right or remedy of consumers under the state law, and as such, is expressly preserved under [this Section] of the Warranty Act....
>
> Chrysler has argued that Congress meant only to preserve state-created rights and remedies as to areas of warranty law where Congress and the Commission have not acted. There is no basis for this interpretation either in the language of the law or in its legislative history. The law itself makes clear that the preservation of consumer rights and remedies is paramount: it not only sets no limitation on the savings clause for state-created rights and remedies, but it expressly subordinates the preemption provision to the savings clause. *Also, the legislative history of the federal law shows that Congress anticipated additional state legislation even in areas where Congress has acted.* For example, the Senate Committee report suggests that a state would be allowed to mandate a type of warranty (such as a "full" warranty) that the federal law describes, but does not require. [S.Rep. No. 151, 93d Cong., 1st Sess. 26 (1973) (this discussion related to a version of the preemption provision that was more broadly preemptive than the version eventually adopted).]
>
> * * * * * *
>
> The Warranty Act and its history show no Congressional intent whatsoever to occupy the field of warranty law, or even to exercise exclusive jurisdiction as to those aspects of warranty law addressed in the Act. On the contrary, as discussed above, Congress incorporated an express provision that strictly defines the areas of state law which were to be preempted. This provision was revised and narrowed numerous times in successive drafts of the bill. Furthermore, as noted, Congress included a broad savings clause, expressly preserving a wide range of state laws that give consumers rights and remedies not provided by the federal law. In such a context, a finding of implied preemption must be based on strong evidence of a necessary conflict with the federal Act or rule.
>
> FTC Staff Opinion attached to *Chrysler Corp. v. Armstrong*, No. 83–45, slip op. (D.Ky. Apr. 30, 1985) (emphasis added) (footnotes omitted); *see Motor Vehicle Manufacturers Ass'n. of the United States, Inc. v. Abrams*, 697 F.Supp. 726, 735 (S.D.N.Y.1988).

occupied the area of informal dispute resolution mechanisms.

### B. Physical Impossibility

Compliance with both the Minnesota law and federal law is possible. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963). Minnesota requires automobile manufacturers to establish or participate in an informal dispute resolution mechanism satisfying FTC requirements. Federal law makes warrantors' participation in such mechanisms optional. Strictly speaking, compliance with both laws is not a physical impossibility. When an automobile manufacturer complies with Minnesota's law by providing an informal dispute mechanism, that manufacturer is not violating federal law.

In addition, 16 C.F.R. § 703.5(f) provides that an informal dispute resolution mechanism may allow an oral presentation by a party to a dispute only if both the warrantor and the consumer expressly agree to the presentation. Minn.Stat. § 325F.665, subd. 6(e) provides that Minnesota's required informal dispute resolution mechanism shall allow each party to appear and make an oral presentation in Minnesota unless the consumer agrees otherwise. Again, compliance with both laws is not impossible. *Chrysler Corp. v. Armstrong,* No. 83–45, slip op. at 1 (E.D.Ky. Apr. 30, 1985); FTC Staff Opinion attached to *Chrysler Corp. v. Armstrong,* No. 83–45, slip op. (D.Ky. Apr. 30, 1985). If the warrantor and the consumer abide by the Minnesota rule, then the FTC rule is not violated. The appellants provide no evidence that the FTC intended to prevent states from requiring oral presentations. FTC Staff Opinion attached to *Chrysler Corp. v. Armstrong,* No. 83–45, slip op. (D.Ky. Apr. 30, 1985).

Finally, Minn.Stat. § 325F.665, subd. 6(i) provides that a consumer may be charged a fee for participating in a dispute mechanism, while 16 C.F.R. § 703.3(a) provides that a consumer shall not be charged any fee for use of such mechanisms. Compliance with both laws is possible even though the state has provided an option where the federal government has not. The lack of actual conflict between the Minnesota law and federal law, in all three instances, differs little from the lack of actual conflict in *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. at 143, 83 S.Ct. at 1218 (a state law allowing avocados to be picked for commercial use only after a certain ripeness is not in actual conflict with a federal law that permitted the picking of avocados both before and after the state level of ripeness).

### C. Compliance with State Law Does Not Frustrate the Purposes of Federal Law

State legislation is preempted if compliance with the state law frustrates the purposes and objectives of federal law. To determine this, we must analyze separately each aspect of the state law complained of by the appellants. The purpose of the Magnuson–Moss Warranty Act is to enhance consumer protection, and the specific goal of section 110 is to encourage warrantors to use informal dispute resolution mechanisms. H.R.Rep. No. 1107, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 7702 and 7722.

#### 1. Required Participation in a Dispute Mechanism

The appellants argue that *Fidelity Federal Sav. & Loan Ass'n. v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), stands for the proposition that a state law limiting the availability of a federally-created option frustrates Congress' objectives and purposes.

In *Fidelity Federal,* the Supreme Court in 1982 concluded that limitations placed on "due-on-sale" clauses in loan instruments by the California Supreme Court are preempted by Federal Home Loan Bank Board [Board] regulation permitting federal savings and loan associations to use "due-on-sale" clauses in their mortgage contracts. *Id.* at 159, 102 S.Ct. at 3025.

During the middle–1970's, the Board expressed concern over the power of a federal savings and loan association to exercise

a "due-on-sale" clause in light of state law limitations. In 1976, the Board issued a regulation explicitly *permitting* federal savings and loan associations to use a "due-on-sale" clause if so desired. 12 C.F. R. § 545.8–3(f). The Board specifically intended to eliminate state restrictions on a savings and loan's ability to accelerate a loan upon transfer. 41 Fed.Reg. 6283, 6285 (1976). The Board further explained its intent that the "due-on-sale" practices of federal savings and loan associations be governed "exclusively by Federal law." 41 Fed.Reg. 18286, 18287 (1976).

In 1978, the California Supreme Court found that a lender's exercise of a "due-on-sale" clause violated a state prohibition against unreasonable restraints on alienation, unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default. *Wellenkamp v. Bank of America*, 582 P.2d 970, 977 (1978).

The United States Supreme Court rejected the state law, concluding that the Board unambiguously intended to preempt states from limiting the power of federal savings and loan associations to employ "due-on-sale" clauses. *Fidelity Federal*, 458 U.S. at 154, 102 S.Ct. at 3023. The fact that the Board did not mandate use of "due-on-sale" clauses was, according to the Court, part of a conscious decision of the Board to afford associations the flexibility to accommodate special situations and circumstances and was not intended to allow states to limit the use of such clauses. *Id.* at 156, 102 S.Ct. at 3024.

> By further limiting the availability of an option the Board considers essential to the economic soundness of the thrift industry the State has created "an obstacle to the accomplishment and execution of the full purposes and objectives" of the due-on-sale regulation.

*Id.*

To put matters simply, the Supreme Court found that the purpose of 12 C.F.R. § 556.9

is clear—to prohibit state limitations on federal savings and loan associations' use of "due-on-sale" clauses—and, therefore, a state law limiting such clauses defeats the purpose and objective of the Board's regulation.

The circumstances underlying *Fidelity Federal*, however, are dissimilar to the instant case. Initially, the history of the two is quite different. The Federal Home Loan Bank Board's decision to adopt a regulation pertaining to "due-on-sale" clauses was in response to certain states limiting the rights of federal savings and loan associations. Here, the impetus was the inadequacy of current state consumer remedies. No state had previously required warrantor participation in dispute resolution mechanisms; so, section 110 and Rule 703 were not, unlike the Board's rule in *Fidelity Federal*, adopted to preempt a particular state action. In addition, the Federal Home Loan Bank Board clearly expressed the policy that it was important that savings and loans have the "flexibility" given by the option of whether to have "due-on-sale" clauses in a particular loan instrument. No such congressional policy of "flexibility" exists in the adoption of the Magnuson–Moss Warranty Act. *Cf. Baird v. General Motors Corp.*, 654 F.Supp. 28 (N.D.Ohio 1986) (Congress, by enacting the National Traffic and Motor Vehicle Safety Act, *expressly found it necessary* to give automobile manufacturers an option to choose one of three occupant crash protection safety options in order to ensure that the automobile industry continues to develop such safety systems and, thereby, preempted a state from requiring only one of the federal options).

Since *Fidelity Federal* is distinguishable from this case and there is no frustration of either the broad goal of enhancing consumer protection or the specific goal of encouraging warrantor participation in informal dispute resolution mechanisms,[8] the

---

8. Automobile Importers emphasize that another goal of the Magnuson–Moss Warranty Act is to enhance competition as Congress did in the cigarette industry. This Act, however, is unlike the Federal Cigarette Labeling and Advertising

Act. The First Circuit found that Congress' expressed purpose in enacting the Federal Cigarette Labeling and Advertising Act—to inform the public of the hazards of cigarette smoking while protecting trade to the *maximum* extent—

Minnesota law requiring automobile manufacturers' participation in informal dispute resolution mechanisms is not preempted. *Cf. Chrysler Corp. v. Texas Motor Vehicles Comm'n.*, 755 F.2d at 1205–06 (a state-operated informal dispute resolution mechanism fails to directly conflict with federal law or to interfere with the attainment of the full purposes of and objectives of section 110 of the Magnuson–Moss Warranty Act).

### 2. Oral Presentation without the Consent of Both Parties

Congress and the FTC failed to provide a purpose for making oral presentations optional of both parties. It cannot be said that the Minnesota law permitting oral presentations at the option of the consumer frustrates the goals of enhancing consumer protection and encouraging warrantors to establish informal dispute resolution mechanisms because automobile manufacturers operating in Minnesota are required to establish such mechanisms. *Compare Motor Vehicle Manufacturers Ass'n. of the United States, Inc. v. Abrams*, 697 F.Supp. at

737;[9] *Chrysler Corp. v. Armstrong*, No. 83–45, slip op. at 1 (E.D.Ky. Apr. 30, 1985).

### 3. Consumer Fees

Minn.Stat. § 325F.665, subd. 6(i) provides that a consumer may be charged a fee for participating in a dispute mechanism, while 16 C.F.R. § 703.3(a) provides that a consumer shall not be charged any fee for use of such mechanisms. Since the maximum fee that can be charged to a consumer is equal to the filing fee for use of conciliation court—in Hennepin County, $15.00, and in St. Louis County, $18.00—the effect of this requirement on the use of resolution mechanisms by consumers, *see* H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7722, is *de minimis* and not sufficient to deter consumers from using such mechanisms. Therefore, this fee aspect of the Minnesota law is not preempted.

### IV. CONCLUSION

By enacting the Magnuson–Moss Warranty Act, Congress has increased the economic strength of consumers without fully

---

preempts state tort claims pertaining to failure to warn. *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987) (the Act directed both the Department of Health and Human Services and the FTC to regulate compliance with the *expressed* dual goals of the Act). It is true that the Warranty Act attempts, in part, to provide consumers with better products at a lower price (including costs of repair) by enhancing competition, but Congress does so by increasing the market power of consumers and not the freedom of warrantors to do as they please to increase profits. Under the Act, consumers may receive increased warranty information. 15 U.S.C. §§ 2302 and 2304. That information has to be more accurate and understandable. 15 U.S.C. §§ 2302 and 2303. The promises in that information are more readily enforceable by the Act. 15 U.S.C. §§ 2304, 2308 and 2310. Additional remedies for consumers are provided. 15 U.S.C. § 2310. The Act attempts to break manufacturer lockstep and force manufacturers to enter into warranty competition. Requiring participation in an informal dispute resolution mechanism—while it may affect automobile manufacturers' profit margins—does not disturb the congressional goal of enhancing competition. *Cf. United States v. State of North Dakota*, 856 F.2d 1107 (8th Cir.1988) ("Because Congress has mandated that the military procure liquor on a competitive basis in order to maximize

profits for the support of welfare and morale activities," a state law raising the costs of procurement of liquor conflicts with federal policy and is, thereby, preempted).

9. In *Motor Vehicle Manufacturers*, the United States District Court for the Southern District of New York held that a New York law permitting oral presentations at the option of the consumer was preempted because giving this option to consumers would deter automobile manufacturers from establishing dispute mechanisms. This problem is not present under the Minnesota scheme because participation is mandatory. The *Motor Vehicle Manufacturers* court held, in addition, that the New York rule of giving the option to the consumer thwarts the "federal purpose of fostering national mechanisms." 697 F.Supp. at 738. We find, however, that there is no legislative history to support the establishment of such a purpose. *But see Wolf v. Ford Motor Co.*, 829 F.2d 1277 (4th Cir.1987). The statements of the FTC, pointed to in *Motor Vehicle Manufacturers* as support for the existence of such a purpose, are far from significant—particularly in light of the FTC Staff Opinion Letter advising Kentucky's Attorney General that state provisions permitting oral presentations at the option of the consumer do not conflict with federal law. *See, supra,* n. 7; *see also Motor Vehicle Manufacturers*, 697 F.Supp. at 735.

occupying the area of consumer protection, an area traditionally reserved for the states. Congress intended state regulation, like the Minnesota lemon law, to operate with the Warranty Act in a mutually supplementary manner. The Minnesota law does nothing to defeat this result. For these reasons, we affirm the district court.