**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIAM MARONYAN,
          *Plaintiff-Appellant,*

v.

TOYOTA MOTOR SALES, U.S.A.,
INC.,
          *Defendant-Appellee.*

No. 09-56949

D.C. No.
8:08-cv-00905-
DOC-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Submitted February 7, 2011*
Pasadena, California

Filed September 20, 2011

Before: Dorothy W. Nelson, Stephen Reinhardt, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge N. R. Smith

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

17819

**COUNSEL**

Martin W. Anderson, Anderson Law Firm, Santa Ana, California, for plaintiff-appellant Mariam Maronyan.

Peder K. Batalden, Horvitz & Levy LLP, Encino, California, for defendant-appellee Toyota Motor Sales, U.S.A., Inc.

**OPINION**

REINHARDT, Circuit Judge:

Mariam Maronyan brought suit against Toyota Motor Sales, U.S.A. Inc. when the new car that she leased developed mechanical problems during the warranty period and Toyota failed to repair them to her satisfaction. In addition to several California state law claims, she alleged breach of warranty under the Magnuson-Moss Warranty Act ("MMWA"). The district court granted Toyota's motion to dismiss for lack of subject matter jurisdiction on the ground that Maronyan did not before filing suit in civil court pursue her claims through the California Dispute Settlement Program ("CDSP") that Toyota maintained and specified in its warranty.

**[1]** Maronyan appeals. She argues that her failure initially to resort to the CDSP provides Toyota an affirmative defense to her warranty claims under the MMWA, but does not defeat subject matter jurisdiction. We review *de novo* whether the district court properly dismissed for lack of subject matter jurisdiction. *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 787 (9th Cir. 2009). Neither party disputes that § 2310(a) of the MMWA imposes a prior-resort requirement on prospective consumer claimants seeking recovery in court. The MMWA provides that if

> (A) a warrantor establishes [a dispute settlement procedure],
>
> (B) such procedure, and its implementation meets the requirements of [the FTC's rules under paragraph (2)], and
>
> (C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,

> then . . . the consumer may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to such procedure . . . .

15 U.S.C. § 2310(a)(3) (2007). The only question before us is whether Maronyan's failure to comply with the MMWA's requirement that a consumer resort to an informal dispute settlement procedure before filing a civil action deprives the court of subject matter jurisdiction. We hold that it does not.

**[2]** Most exhaustion requirements established by Congress do not result in a loss of subject matter jurisdiction. *See I.A.M. Nat'l Pension Fund Benefit Plan C. v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984) ("Only when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision . . . has the Supreme Court held that exhaustion is a jurisdictional prerequisite"). Rather, statutorily created exhaustion requirements ordinarily constitute prudential affirmative defenses that may be defeated by compelling reasons for failure to exhaust. *See Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) (distinguishing prudential exhaustion, "a codified requirement of administrative exhaustion," from jurisdictional exhaustion which requires "sweeping and direct language which states that no action shall be brought under [the statute at issue], not merely that only those actions shall be brought in which administrative remedies have been exhausted").

**[3]** A consumer's failure to exhaust an administrative or other pre-filing remedy deprives federal courts of subject matter jurisdiction only in those cases in which Congress makes plain the jurisdictional character of the exhaustion requirement in question. "Consistent with the Supreme Court's guidance in *Weinberger*, we have rarely found exhaustion statutes to be a jurisdictional bar." *McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 978 (9th Cir. 2002). "[F]ailure to

exhaust does not deprive a federal court of jurisdiction when the exhaustion statute is merely a codification of the exhaustion requirement," unless Congress uses " 'sweeping and direct' language that goes beyond a requirement that only exhausted claims be brought." *Id.* at 979 (quoting *Weinberger*, 422 U.S. at 757).

That a failure to satisfy a statutory prerequisite to filing suit deprives a court of subject matter jurisdiction only when Congress provides a sweeping and direct jurisdictional mandate helps to explain why none of the cases on which Toyota relies concludes that the statutory provision at issue operates as a jurisdictional bar. *See Reed Elsevier v. Muchnick*, 130 S. Ct. 1237 (2010) (holding that a copyright holder's failure to comply with § 411(a)'s registration requirement does *not* restrict a federal court's subject-matter jurisdiction over copyright infringement claims involving unregistered works); *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) (holding that Title VII's "employee-numerosity requirement," which requires potential defendants to maintain at least fifteen employees, does *not* limit a court's jurisdiction); *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004) (holding that a bankruptcy rule that allows a creditor sixty days to object to a debtor's discharge was *not* a jurisdictional bar to considering an untimely objection); *McBride*, 290 F.3d at 979 (holding that the exhaustion requirement of 7 U.S.C. § 6912(e) is *not* jurisdictional).

Most recently, the Supreme Court in *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011), unanimously held that the deadline for filing a notice of appeal with the Veterans Court was *not* jurisdictional because Congress, in enacting the statute, did not "mandate[ ]" that it was. *Id.* at 1203. The Court explained:

> Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term. . . . Other rules, even if important and mandatory, we

have said, should not be given the jurisdictional brand. . . . Under *Arbaugh*, we look to see if there is any "clear" indication that Congress wanted the rule to be "jurisdictional."

*Id*. at 1202-03 (citations omitted). *Arbaugh* emphasized that filing requirements restrict a court's subject matter jurisdiction only "[i]f the Legislature *clearly states* that a threshold limitation on a statute's scope shall count as jurisdictional." 546 U.S. at 515 (emphasis added). In an explanatory footnote immediately following this passage, the Court noted that "Congress has exercised its prerogative to restrict the subject-matter jurisdiction of federal district courts based on a wide variety of factors," and lists a number of previously-recognized jurisdictional criteria, such as restrictions on the classes of plaintiffs empowered to bring a civil action or defendants potentially subject to liability. None of these considerations resembles the MMWA's requirement that a plaintiff exhaust pre-filing remedies before bringing an action. *Id*. at 515 n.11.

The Court has chastised lower courts for their overly zealous application of the term "jurisdictional" to what are accurately understood as claims-processing rules or elements of a plaintiff's claim. *Reed Elsevier,* 130 S.Ct. at 1243-44. A unanimous court in *Arbaugh* restated the necessity of a clear Congressional mandate to elevate a statutory requirement to a jurisdictional prerequisite, emphasizing that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." 546 U.S. at 515-16. Although the Court has acknowledged that "Congress is free to attach . . . the jurisdictional label to a rule that [the courts] would prefer to call a claims-processing rule," *Henderson*, 131 S.Ct. at 1203, it has cautioned lower courts to refrain from capriciously assigning the jurisdictional label when Congress has failed to clearly provide the requisite mandate, *see Reed Elsevier*, 130 S.Ct. at

1244 (cautioning courts against engaging in "drive-by juris-dictional rulings").

**[4]** The MMWA's requirement that a "consumer may not commence a civil action. . . unless he initially resorts to [an informal dispute settlement procedure]," 15 U.S.C. § 2310(a), is similar in all material respects to the requirements in two other statutes that we have examined previously.[1] In both cases, we held that the exhaustion requirements do *not* deprive the district court of subject matter jurisdiction. First, in *Rumbles v. Hill*, 182 F.3d 1064 (9th Cir.1999), we reviewed the exhaustion requirement of 42 U.S.C. § 1997e(a):

> *No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

We held that the exhaustion of remedies under § 1997e(a) was *not* a jurisdictional prerequisite to suit under 42 U.S.C. § 1983. *See Rumbles*, 182 F.3d at 1067-68.[2] Second, in *McBride*, we held that a failure to comply with 7 U.S.C. § 6912(e)'s requirement that "a person *shall exhaust all*

---

[1]We are aware of no other statutory pre-filing requirement similar to § 2310(a) of the MMWA that has been held to deprive a district court of subject matter jurisdiction.

[2]All nine other circuits to have considered § 1997e(a) also held that failure to exhaust did not deprive the district court of jurisdiction. *See Anderson v. XYZ Correct'l Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005); *Richardson v. Goord*, 347 F.3d 431, 433-34 (2d Cir. 2003); *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1206 (10th Cir. 2003); *Ali v. Dist. of Columbia*, 278 F.3d 1, 5-6 (D.C.Cir. 2002); *Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002); *Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001); *Curry v. Scott*, 249 F.3d 493, 501 n. 2 (6th Cir. 2001); *Nyhuis v. Reno*, 204 F.3d 65, 69 n.4 (3d Cir. 2000); *Massey v. Helman*, 196 F.3d 727, 732 (7th Cir. 1999).

*administrative appeal procedures* established by the Secretary or required by law *before the person may bring an action* in a court of competent jurisdiction," did *not* result in loss of subject matter jurisdiction. We held, rather, that the provision constituted "merely a codification of the exhaustion requirement." 290 F.3d at 980.[3] For the same reason that we held in *McBride* and *Rumbles* that the virtually identical exhaustion requirements of § 6912(e) and § 1997e(a) were not jurisdictional in character, we hold that § 2310(a) does not strip the district court of subject matter jurisdiction in the case before us.

Toyota urges us to conclude that Congress has clearly "mandated" that the MMWA exhaustion requirement is jurisdictional based on its aggregation of three scattered pieces of ambiguous and indirect statutory language. Toyota apparently perceives a clear mandate in: (1) a later subsection of the MMWA whose provisions are made "subject to subsection[ ] (a)(3)" and includes "jurisdiction" as one among several other subheading labels; (2) the same later subsection, which merely refers to and by no means incorporates the exhaustion requirement in § 2310(a)(3), and states that "any court of competent jurisdiction" may hear MMWA claims; and (3) that same subsection which identifies the class of cases that fall within courts' adjudicatory authority under the MMWA. No serious analysis is required to explain why such obscure references to jurisdiction elsewhere in the statute do not constitute the kind of "sweeping and direct" language necessary,

---

[3]Two of the three other circuits to have considered § 6912(e) held that it was *not* jurisdictional. *See Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007); *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 999 (8th Cir. 2006). The only circuit to hold that it was jurisdictional is the Second. *See Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94-95 (2d Cir. 1998). The Fifth, Eighth, and Ninth Circuits soundly rejected the Second Circuit's erroneous presumption that statutory exhaustion requirements deprive district courts of subject matter jurisdiction. *See Dawson Farms*, 504 F.3d at 603; *Ace Prop.*, 440 F.3d at 999; *McBride*, 290 F.3d at 980.

*Weinberger*, 422 U.S. at 757, to demonstrate that Congress "clearly state[d]," *Arbaugh*, 546 U.S. at 515, its intention to "mandate[ ]" that a consumer's failure to comply with § 2310(a)(3)'s exhaustion requirement deprives the district court of subject matter jurisdiction to hear his warranty claims. *Henderson*, 131 S.Ct. at 1203.

**[5]** To the contrary, the statute's plain language reflects that its provision for the use of dispute settlement procedures before filing suit is not a jurisdictional bar but rather a prudential exhaustion requirement. Neither § 2310(a)(3) nor § 2310(a)(4) even mentions subject matter jurisdiction. Elsewhere, the statute prompts warrantors to include "[i]nformation respecting the availability of any informal dispute settlement procedure" and a recital "that the purchaser may be required to resort to such procedure before pursuing any legal remedies in the courts." § 2302(a)(8). Moreover, the agency to which Congress expressly delegated authority to interpret the MMWA explained shortly after its enactment that it seeks "to ensure that the consumer is not deceived into believing that prior resort to the Mechanism is required in all instances." FTC Rules, Regulations, Statements, Interpretations Under Magnuson-Moss Warranty Act, 40 Fed. Reg. 60,168, 60,194-95 (Dec. 31, 1975) (codified at 16 C.F.R. 701). None of these subsections mention subject-matter jurisdiction or otherwise "speak in jurisdictional terms." *Arbaugh*, 546 U.S. at 515 (quoting *Zipes v. Trans World Airlines*, 455 U.S. 385, 394 (1982)). While they do employ mandatory language, the Court has repeatedly held that "a statutory condition that requires a party to take some action before filing a lawsuit is not automatically 'a jurisdictional prerequisite to suit.' " *Reed Elsevier*, 130 S.Ct. at 1246 (quoting *Zipes*, 455 U.S. at 393). *See also Henderson*, 131 S.Ct. at 1205; *Arbaugh* 546 U.S. at 510. In light of the Supreme Court's current and continuing precedent, we cannot accept Toyota's argument that the statutory language used to establish MMWA's exhaustion requirement evinces a clear Congressional man-

date to bestow jurisdictional status on a prerequisite that is properly deemed an affirmative defense.

To summarize, the MMWA's exhaustion requirement does *not* use sweeping and direct language demonstrating clear congressional intent to mandate loss of subject matter jurisdiction. Nor does Toyota rely on a single case in which a court dismissed an action for lack of subject matter jurisdiction on the basis of a plaintiff's failure to exhaust a statutory prerequisite to filing suit. In the only two cases in which we have considered statutory provisions similar to the MMWA's exhaustion requirement, we held that a failure to exhaust prefiling requirements does *not* strip a district court of its subject matter jurisdiction, a conclusion almost unanimously approved by the other circuits. *Supra* at 17825-27 & nn. 2-3.

**[6]** For the reasons explained above, we hold that § 2310(a)'s prerequisite that a "consumer may not commence a civil action. . . unless he initially resorts to [an informal dispute settlement procedure]" is merely a codification of the MMWA's exhaustion requirement and does not operate as a jurisdictional bar. Accordingly, we reverse and remand so that the district court may consider, in light of this opinion, how to proceed with the instant action, including the failure-to-exhaust issues.[4]

**REVERSED** and **REMANDED** for further proceedings in light of this Opinion.

---

[4]The district court did not recognize that it had subject matter jurisdiction over Maronyan's claim and therefore could not address the validity of Toyota's failure to exhaust argument as an affirmative defense. The only issue properly before this court on appeal is thus the question of subject-matter jurisdiction. We remand to the district court to allow it to address any issues related to the assertion of the exhaustion defense in the first instance. *See Cutter v. Wilkinson*, 125 S.Ct. 2113, 2120 n.7 ("Because these defensive pleas were not addressed by the [court below], and mindful that we are a court of review, not first view, we do not consider them here.")

N.R. SMITH, Circuit Judge, dissenting:

The Supreme Court recently explained in *Henderson ex. rel. Henderson v. Shinseki* that "Congress is free to attach the conditions that go with the jurisdictional label to a[n exhaustion] rule that *we would prefer* to call a claim-processing rule." 131 S. Ct. 1197, 1203 (2011) (emphasis added). Because Congress incorporated the exhaustion requirement of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA") into the statute's jurisdiction-granting provisions, we must defer to Congress's treatment of this provision as jurisdictional. *See Henderson*, 131 S. Ct. at 1203. Therefore, I must dissent from the majority's conclusion that the MMWA's exhaustion provision is merely procedural.

Additionally, the majority errs in declining to address a critical question of law properly raised on appeal—whether courts (rather than the Federal Trade Commission) should decide challenges to a "Mechanism's"[1] compliance with federal regulations. Under the MMWA, courts no longer have authority to decide compliance issues, because Congress vested authority to decide those issues in the first instance with the FTC. On the other hand, even if the judiciary retained authority to address these issues, courts should defer to the FTC's unique expertise in Mechanism compliance under the primary jurisdiction doctrine.

## I.   Mechanism exhaustion under the MMWA is a jurisdictional prerequisite to filing suit

Judicial interpretation of the MMWA "begins with the plain language of the statute. If the text of the statute is clear, this court looks no further in determining the statute's mean-

---

[1] The FTC refers to "informal dispute settlement procedures" authorized by the MMWA as "Informal Dispute Settlement Mechanisms" (IDSMs) or simply "Mechanisms." *See* 16 C.F.R. § 703.1(e); 64 Fed. Reg. 19700, 19701 (Apr. 22, 1999).

ing." *K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1081 (9th Cir. 2007) (citation omitted). The key question in this case is "whether *Congress* mandated that the [exhaustion provision] be 'jurisdictional.' " *Henderson*, 131 S. Ct. at 1203. (emphasis added). The *Henderson* Court reiterated the "readily administrable bright line" test from *Arbaugh v. Y&H Corp.* for deciding such questions: "we look to see if there is any "clear" indication that Congress wanted the rule to be 'jurisdictional.' " 131 S. Ct. at 1203 *(quoting Arbaugh*, 546 U.S. 500, 515-16 (2006)). To indicate such a preference, Congress can "[1] speak in jurisdictional terms or [2] refer in any way to the jurisdiction of the [district court]." *Id.* at 1204 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)); *accord Arbaugh*, 546 U.S. at 516. "Congress, of course, need not use magic words in order to speak clearly on this point." *Henderson*, 131 S. Ct. at 1203. The analysis might also turn on "the 'legal character' of the requirement, which we discern[ ] by looking to the condition's text, context, and relevant historical treatment." *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1246 (2010) (citations omitted); *see Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("[L]itigants [should use] the label 'jurisdictional' not for claim-processing rules, but only for prescriptions *delineating the classes of cases* (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." (emphasis added)).

Section 2310(d)(1) of the MMWA ties Mechanism exhaustion to the jurisdiction of the courts by expressly incorporating § 2310(a)(3):

> **(d) Civil action by consumer for damages, etc.; jurisdiction; recovery of costs and expenses; cognizable claims**

> (1) *Subject to [the exhaustion requirement in] subsection[ ] (a)(3)* . . . of this section, a consumer who is damaged by the failure of a supplier, warrantor, or

> service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief —
>
> > (A) in any court of competent jurisdiction in any State or the District of Columbia; or
> >
> > (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 U.S.C. § 2310(d)(1) (emphasis added). There is no doubt that section 2310(d)(1) is a jurisdiction-granting provision, because: (1) the subsection heading includes the label "jurisdiction," § 2310(d); (2) it speaks in jurisdictional terms by specifying which courts may hear MMWA claims, *Arbaugh*, 546 U.S. at 515; and (3) it identifies the classes of cases that fall within courts' adjudicatory authority under the MMWA, *see Kontrick*, 540 U.S. at 455. Therefore, because Congress incorporated § 2310(a)(3)'s exhaustion requirement into the jurisdictional provisions of § 2310(d)(1), the exhaustion provision must be treated as jurisdictional.[2]

The majority correctly notes that the MMWA's exhaustion provision— providing that a "consumer may not commence

---

[2]The majority points out that the Court warned lower courts not to find jurisdictional limits unless the "Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional . . . ." *Reed Elsevier*, 130 S. Ct. at 1244 (quoting *Arbaugh*, 546 U.S. at 515-16). However, *Reed Elsevier* concluded that the numerosity provision at issue in *Arbaugh*, after examining the text of the provision, is not jurisdictional because "the employee numerosity provision is located in a provision 'separate' from" the jurisdiction section. *Id.* "Accordingly, the numerosity requirement could not fairly be read to 'speak in jurisdictional terms or in any way refer to the jurisdiction of the district courts.' " *Id.* (quoting *Arbaugh*, 546 U.S. at 515.). Here, unlike *Arbaugh*, the Mechanism exhaustion provision is incorporated into the jurisdictional provisions of the statute.

a civil action . . . unless he initially resorts to [an informal dispute settlement procedure]," § 2310(a)(3)—is not, *standing alone*, "jurisdictional in character." Maj. Op. at 17826-27. However, the majority ignores the fact that Toyota never made this argument, and the district court, therefore, did not address it. Instead, Toyota argued that Congress imbued § 2310(a) with jurisdictional character by incorporating the exhaustion provision into a clearly jurisdiction-granting subsection of the statute. The majority dismisses this argument as requiring "[n]o serious analysis," because the incorporation is not sufficiently "sweeping and direct" to convey an intent to tie exhaustion to jurisdiction. Maj. Op. at 17827. One can reach this conclusion only by ignoring the Supreme Court's most recently elucidated indicia of Congressional intent: (1) "speak[ing] in jurisdictional terms," or (2) "refer[ring] in any way to the jurisdiction of the courts." *Henderson*, 131 S. Ct. at 1204 *(quoting Zipes*, 455 U.S. at 394). Nowhere in its opinion does the majority employ this "readily administrable bright line" rule.[3] *Id.* at 1203 *(quoting Arbaugh*, 546 U.S. at 515-16). When this standard is applied, it becomes clear that incorporating the exhaustion requirement into a subsection that both "speaks in jurisdictional terms" *and* "refer[s] in [some] way to the jurisdiction of the [courts]," *id.*, conveys an intent to tie exhaustion to jurisdiction.

In sum, Congress is "free to attach the conditions that go with the jurisdictional label" at its discretion, even in cases where "we would prefer to call [the provision] a claim-processing rule." *Id.* This attachment need not be consistent with other statutes. Our inquiry simply turns on whether Con-

---

[3]The majority simply applies the "sweeping and direct language" standard from *Weinberger v. Salfi*, 422 U.S. 749 (1975). This is not the standard employed by the Supreme Court in Henderson, *Arbaugh*, or *Zipes*. To the extent "sweeping and direct language" is still the applicable standard, it has been refined to encompass (1) "speak[ing] in jurisdictional terms," (2) refer[ing] in any way to the jurisdiction of the [courts]," or (3) conveying jurisdictional intent in the "context" of the statute. *Henderson*, 131 S. Ct. at 1204; *Arbaugh*, 546 U.S. at 516; *Zipes*, 455 U.S. 394.

gress has tied jurisdiction to the exhaustion requirement; in this case, it clearly has. I would therefore affirm on this issue and hold that the district court lacks jurisdiction to consider Maronyan's claims until she exhausts Toyota's Mechanism.

## II.   The Federal Trade Commission must decide challenges to a Mechanism's regulatory compliance

Regardless whether Toyota's dispute settlement program is a jurisdictional or procedural prerequisite to filing suit, Maronyan contends she was not required to exhaust the program. She argued to the district court that (1) Toyota's program does not qualify as a Mechanism pursuant to certain MMWA and FTC regulations; and (2) courts, rather than the FTC, should determine a Mechanism's regulatory compliance before making exhaustion a prerequisite to filing suit. Toyota argued to the district court that state and federal agencies have authority to assess Mechanism compliance, agency decisions should be conclusive, and litigating Mechanism compliance in every instance will produce inconsistent results. The district court granted Toyota summary judgment on the assumption that (1) courts have authority to review a Mechanism's compliance with federal regulations and (2) Toyota's program was, in fact, sufficiently compliant to require exhaustion. Although the issues of a court's authority to decide Mechanism compliance and the propriety of making such decisions were properly raised on appeal, the majority's opinion curiously declined to address them. Because I believe these questions of law should have been answered by our court, I address each in turn below.

### A.   Courts no longer have authority under the MMWA to review Mechanism compliance

The text and structure of the MMWA reveal that the FTC should determine a Mechanism's compliance with federal law in the first instance. The statute assigns several clear responsibilities to the FTC: (1) establish the minimum requirements

for Mechanisms, *id.* § 2310(a)(2); (2) on its own initiative, it *may* review Mechanism operations for compliance, *id.* § 2310(a)(4); (3) upon written complaint, it *must* review Mechanism operations for compliance, *id.*; and (4) it may take appropriate remedial action against non-compliant programs, *id.*[4] The role of the courts (apparent from the text of the statute) is simply to invalidate any procedure that is "unfair" *until* the FTC adopts its own certification regulations. § 2310(a)(5). Maronyan argues that, because Mechanisms operate as "prerequisite[s] to pursuing a legal remedy" under § 2310(a)(3)(B), the MMWA impliedly authorizes courts to determine whether Mechanisms comply with FTC regulations when consumers bring claims under the statute. She supports this argument with an excerpt from a 1974 Senate Conference Report stating:

---

[4]The statute provides, in relevant part:

> (2) The [FTC] shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies. . . .

> . . . .

> (4) The Commission on its own initiative may, or upon written complaint filed by any interested person *shall*, review the bona fide operation of any dispute settlement procedure resort to which is stated in a written warranty to be a prerequisite to pursuing a legal remedy under this section. If the Commission finds that such procedure or its implementation fails to comply with the requirements of the rules under paragraph (2), the Commission may take appropriate remedial action under any authority it may have under this chapter or any other provision of law.

> (5) Until rules under paragraph (2) take effect, this subsection shall not affect the validity of any informal dispute settlement procedure respecting consumer warranties, but in any action under subsection (d) of this section, the court may invalidate any such procedure if it finds that such procedure is unfair.

§ 2310(a) (emphasis added).

This is not intended to exclude the courts from reviewing the fairness, and compliance with FTC rules, of such procedures even where the FTC has not acted to disapprove them. In this connection the conferees recognize the limited resources of the Commission and the fact that its other responsibilities may preclude it from acting in some cases where private dispute settlement procedures may not comply with the legislation or the Commission's rules thereunder. Accordingly, the courts would be free to determine that a given dispute settlement procedure need not be exhausted because it was not fair, had no provision for governmental or consumer participation, or did not comply with FTC rules.

S. Rep. No. 93-1408, at 5 (1974) (Conf. Rep.), reprinted in 1974 U.S.C.C.A.N. 7755, 7759.

This legislative history is not persuasive. As the Supreme Court observed in *Puerto Rico Department of Consumer Affairs v. Isla Petroleum Corp.*, courts "never [search for] congressional intent in a vacuum, unrelated to the giving of meaning to an enacted statutory text. . . . [U]nenacted approvals, beliefs, and desires are not laws." 485 U.S. 495, 501 (1988). A legislative report may simply be "precatory" where the actual text of the statute does not support the language of the report. *Sec'y of the Interior v. California*, 464 U.S. 312, 322 n.9 (1984). Thus, legislative history is only persuasive to the extent it finds textual support in the statute. *Shannon v. United States*, 512 U.S. 573, 583 (1994) (the Court will not give "authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute"); *Isla Petroleum*, 485 U.S. at 501.

Here, the statute identifies *one* instance in which courts should play a role in the Mechanism qualification process: "invalidat[ing] any such procedure if it finds that such procedure is unfair," but only *"until [FTC rules] take effect."*

§ 2310(a)(5) (emphasis added). Because the FTC adopted rules in 1975, *see* Promulgation of Rule, 40 Fed. Reg. 60190-01 (Dec. 31, 1975), courts no longer have statutory authority to decide a procedure's fairness or compliance with FTC rules. If Congress intended courts to continue playing this role, it should have (1) omitted the limiting qualification "until [FTC rules] take effect," or (2) included similar authorizing language elsewhere in the statute, such as § 2310(a)(3) or (4). Thus, the intent of the Senate report authors (that courts continue playing a role in the review of Mechanism compliance) did not bear out in the statutory language ultimately approved by Congress.

Instead, Congress vested the FTC with authority to promulgate rules, monitor Mechanism compliance, and take remedial action against non-compliant programs. *Id.* § 2310(a)(2), (4). Significantly, Congress also established the process by which consumers should challenge the compliance of a Mechanism: "The Commission . . . upon written complaint filed by any interested person shall[ ] review the bona fide operation of any [Mechanism]" for compliance with FTC rules. *Id.* § 2310(a)(4). As this provision suggests, the proper way to challenge a Mechanism's compliance with federal regulations is to lodge a written complaint with the FTC. *See Wolf v. Ford Motor Co.*, 829 F.2d 1277, 1279 (4th Cir. 1987) ("[T]he [MMWA]'s . . . mandate that the [FTC] prescribe minimum requirements for such mechanisms, evince a congressional intent to reserve to the federal regulatory body the authority to supervise whether the mechanisms are created and operated fairly."); *id.* at 1279 n.3 ("[A]ny attack on the fairness or legitimacy of a dispute settlement mechanism must be through administrative channels."); *see also Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 346 n.3 (3d Cir. 1997) (stating in dicta that whether the "BBB Auto Line [Mechanism] is in compliance with the FTC regulations . . . . is for the FTC, and not this Court, to decide").

Maronyan also claims the FTC renounced this role in an Action statement, suggesting Mechanism compliance is an

"issue for litigation." *See* Interpretations of Magnuson-Moss Warranty Act, 64 Fed. Reg. 19,700, 19,708 (Fed. Trade Comm'n Apr. 22, 1999). This is inaccurate. In that Action, the FTC declined auto manufacturers' request to establish a national "prior approval" certification program that would determine Mechanism compliance with Rule 703 *before* mechanisms became effective and preempt certain state certification standards. *Id.* at 19,707-08. The manufacturers suggested a federal certification program would (1) eliminate the uncertainty of conflicting state certification standards; (2) diminish the risk of litigation over a mechanism's compliance with federal rules; and (3) encourage more warrantors to establish Mechanisms by diminishing the cost of compliance with unified standards for mechanism certification. *Id.* at 19,708. The Commission "recognize[d] that a uniform certification program could possibly diminish uncertainty," but declined the recommendation because, among other things, "FTC certification would not eliminate a [Mechanism]'s alleged non-compliance with Rule 703 as an issue for litigation." *Id.* Thus, the FTC did not disavow compliance oversight as an "issue for litigation." It merely disputed one of the purported benefits of a national certification program by explaining that federal certification might create *more* litigation from auto manufacturers challenging the FTC's denial of certification and consumers challenging the FTC's approval of certification. *Id.* at 19,708 n.65.

If there is any doubt, the FTC acknowledges its continuing role in the compliance verification process under Rule 703. *Id.* at 19,707; *see* 16 C.F.R. §§ 703.6, 703.7. The FTC's existing regulations require Mechanisms to (1) maintain detailed records on each dispute referred to it, organize the records in categorical indices, generate semi-annual aggregated statistics based on the result of arbitration, and maintain such records for four years, *id.* § 703.6; (2) make these records available to independent auditors for evaluation based on criteria determined by the FTC, *id.* § 703.7(a), (b), (d); and (3) submit audits to the FTC on an annual basis, *id.* § 703.7(c). Thus,

under both the statute and relevant FTC regulations, the FTC exclusively oversees warrantors' Mechanism compliance.

## B.    Courts should defer to the FTC on issues of Mechanism compliance

Even if courts had authority under the MMWA to address Mechanism compliance with federal regulations, courts should defer to the FTC under the primary jurisdiction doctrine. The primary jurisdiction doctrine prescribes deference to an administrative agency where (1) the issue is not "within the conventional experiences of judges," (2) the issue "involves technical or policy considerations within the agency's particular field of expertise," (3) the issue "is particularly within the agency's discretion," or (4) "there exists a substantial danger of inconsistent rulings." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172-73 (9th Cir. 2002) (citations omitted); *accord Nat'l Commc'n Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995). The issue of Mechanism compliance falls within each of these categories.

First, Mechanism compliance involves "technical [and] policy considerations within the [FTC]'s field of expertise," which considerations fall outside the conventional experience of judges. The FTC has exclusive authority to promulgate minimum standards for Mechanisms, *see* § 2310(a)(2), and it alone monitors IDSM compliance nationally, *see id.* § 2310(a)(4). Thus, the FTC is in a unique position to determine the national implications of compliance orders determining, among other things, how strict compliance must be with certain provisions and whether the substantial compliance doctrine applies to the overall operation of the Mechanism. For example, the FTC declined to establish a national "prior approval" certification program in part because it might "exert a chilling effect on competition and on experimentation by Mechanisms, warrantors, and state governments in setting up and administering these programs." 64 Fed. Reg. at 19,708. This was a policy judgment informed by the FTC's expertise

as the national overseer of Mechanism operations. The FTC processes data from annual audits submitted by every Mechanism in the country to evaluate Mechanisms' overall performance in a broad range of categories. *See* 16 C.F.R. § 703.7. Because a court (utilizing the narrow facts in a single case) cannot evaluate the many policy considerations hanging in the balance of a compliance order, the FTC is better suited to decide compliance issues under the national Mechanism regulatory regime.

Second, Mechanism compliance is "particularly within the agency's discretion." Congress gave the FTC substantial leeway in reviewing Mechanism compliance and taking "appropriate remedial action" against non-compliant Mechanisms. *See* § 2310(a)(4). The FTC is in the best position to determine whether strict compliance with some provisions in Rule 703 (e.g., the four-year record keeping requirement, 16 C.F.R. § 703.6(f)) may be less important than strict compliance with other provisions (e.g., the requirement that manufacturers act in good faith in deciding whether to accept the outcome proposed by a Mechanism arbitrator, *id.* § 703.5(j)). Similarly, the FTC can better assess when the volume of a Mechanism's irregularities rise to the level of non-compliance such that consumers need not exhaust the Mechanism before filing suit. The FTC has also expressed its desire to encourage "competition" and "experimentation" by warrantors in setting up and administering Mechanisms, and "would be loathe to take regulatory action likely to exert a chilling effect" on this process. 64 Fed. Reg. at 19,708. Strict enforcement by a court of any particular regulation could have the same chilling effect on warrantors' Mechanism experimentation or even warrantors' willingness to create Mechanisms. Thus, Mechanism compliance falls "particularly within the [FTC's] discretion," because the FTC is in the best position to balance consumers' needs with Congress's desire to encourage fair and expeditious settlement of consumer disputes. *See* § 2310(a)(1).

Finally, "there [is] a substantial danger of inconsistent rulings" that could compromise Congressional objectives under-

lying the MMWA. If warrantors must prove a Mechanism's compliance to trial courts *anytime* a consumer brings a claim under the MMWA, inconsistent rulings are virtually inevitable. Courts would create a national patchwork of Mechanism compliance decisions that companies would have to monitor and adapt to ensure their own Mechanisms are deemed compliant when they assert § 2310(a)(3) exhaustion as a jurisdictional bar. This would raise the cost of compliance for warrantors and likely discourage companies from using Mechanisms to resolve consumer complaints. The FTC, by contrast, operates as the national clearinghouse for compliance standards. If all compliance decisions are rendered by the same agency, the standards will be more consistent and easy to identify. Congress explicitly declared its "policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement Mechanisms." § 2310(a)(1). Because creating an inconsistent regulatory patchwork through the courts could compromise this policy, the FTC should remain the primary judge of a Mechanism's compliance with federal regulations.

In sum, given the statutory framework establishing the FTC as the principal authority on Mechanism compliance, the FTC is best suited to address challenges to Mechanism compliance in the first instance. Therefore, the FTC's compliance decisions deserve judicial deference under the primary jurisdiction doctrine. Maronyan's challenge to Toyota's Mechanism compliance status should have been be directed to the FTC rather than the courts. *See* § 2310(a)(3). Because Maronyan has not demonstrated that the FTC regards Toyota's CDSP Mechanism as non-compliant with Rule 703 or applicable provisions of the MMWA, she must exhaust her warranty claims through Toyota's Mechanism before filing suit. Her failure to do so deprives the federal courts of jurisdiction over her claims arising under the MMWA.